CASE 34—PETITION EQUITY—FEBRUARY 22.

# Maysville and Mt. Sterling Turnpike Road Company v. Ratliff.

APPEAL FROM BATH CIRCUIT COURT.

1. INJUNCTION—TOLL-GATES.—To entitle an individual to an injunction restraining a turnpike company from erecting a toll-gate at a particular place, it must appear that the gate would be a public nuisance, and in addition, that the plaintiff would suffer a special injury distinct from that suffered by the public.

2. SAME.—A turnpike company has the right to place its gates so as to most effectually and certainly collect what it is legally entitled to, in so far as it is not restricted by its charter, and to that end may also change any gate after it is once established.

3. SAME.—A turnpike company may, unless its charter otherwise provides, erect gates at a less distance apart than five miles, though the toll must be proportioned according to distance.

Maysville and Mt. Sterling Turnpike Road Company v. Ratliff.

4. SAME.—A turnpike company may, without rendering itself liable for obstructing the highway, erect a toll-gate and a toll-house upon its right of way, provided it leaves the portion of the road covered with stone free for travel.

## J. S. HURT, W. R. PATTERSON AND C. W. GOODPASTER FOR APPELLANT.

1. After the president and directors of appellant have caused gates to be erected, they have power, should occasion require, to change the site of such gates.
2. The evidence shows conclusively that the site of the new gate that appellant attempted to erect is not upon appellee's land but upon appellant's land.
3. If the erection of the new gate at the site proposed is a nuisance at all, which appellant denies, it is a public nuisance, and to entitle appellee to an injunction he must show some injury distinct from that of the general traveling public. (Eden on Injunctions, vol. 1, side page 782 and cases cited; *Ibid.*, side page 816; Barr v. Stevens, 1 Bibb, 293; Commonwealth v. Lexington and Harrodsburg Turnpike Road Co., 6 B. M., 397; Crosby v. O. & N. R. R. Co., 10 Bush, 291; Shed v. Hawthorn, 3 Neb., 179.)

   Moreover, appellee must show irreparable damage, which he has not done. (Eden on Injunctions, side page 816; Fort v. Graves, 29 Md., 188; Story's Equity, vol. 2, side page 925; Wyrstanley v. Lee, 16 Ves., 342; Earl Ripon v. Hobart, Mylne & Kean, 169; Swanst. R., 336.)
4. Appellee has not sued out this injunction to prevent injury to himself and farm, but in the interest of the "Bath County Live Stock and Trotting Association;" and his motives in this respect may properly be inquired into by the court in determining whether or not the injunction should be granted. (Edwards v. Allonez Mining Co. (Sup. Ct. Mich.), Cent. Law J., Mch. 8, 1878.)

## H. L. STONE FOR APPELLEE.

1. Appellant had no authority to change its gates after they were once located. (Kenton Co. Ct. v. Bank Lick Turnpike Co., 10 Bush, 535; Griffin v. House, 18 Johnson's Rep. (N. Y.), 397; Hartford and Dedham Turnpike Corporation v. Baker, 17 Pick. (Mass ), 432; State of Conn. v. Norwalk and Danbury Turnpike Co., 10 Conn., 157; Turnpike Society v. Hosmer, 12 Conn., 360.)
2. Appellant's attempt to remove its gate was a gross abuse of its powers, and therefore may be restrained by injunction. (High on Injunctions, vol. 2, sec. 1200.)
3. Appellee's injuries are not in common with the general public, but are *special*, permanent and irreparable.

4. An injunction is the appropriate remedy to prevent the obstruction of a public highway. (High on Injunctions, secs. 816, 818 and 820; Pettibone v. Hamilton, 40 Wis., 402.)

5. The fact that appellant could not collect tolls at its toll-gate No. 8 from persons entering the fair grounds from the direction of Sharpsburg did not authorize the removal of its gate. As the persons so entering the fair grounds did not pass through the toll-gate or around it by going into the pike beyond, no tolls were due from them. (Lexington and Georgetown Turnpike Road Co. v. Redd, 2 B. M., 31; Russell v. Muldraugh's Hill, Campbellsville and Columbia Turnpike Road Co., 13 Bush, 307.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant being the owner of a turnpike road extending from Maysville through Sharpsburg to Mt. Sterling, and entitled by its charter to collect tolls thereon, had, for many years, a toll-gate designated No. 8, at a point on its road about two miles north of Sharpsburg. But having commenced the erection of another gate at a point nearer to but more than a mile from Sharpsburg, with the avowed purpose of collecting tolls there and abandoning gate No. 8, appellee brought this action and obtained an injunction restraining it from erecting and maintaining a gate or collecting tolls at any place on its road adjoining or opposite appellee's farm between No. 8 and a point one mile north of Sharpsburg, and by the judgment appealed from that injunction was perpetuated.

It is contended for appellee that the injunction is proper, because appellant was endeavoring to perform an illegal act, which inflicted special injury to appellee, aside from the general public, and the erection of the toll-gate in appellant's road obstructed the public highway and created a public nuisance, peculiarly damaging to appellee.

To maintain this action it must appear that the

erection of a toll-gate between No. 8 and a point one mile north of Sharpsburg would be a public nuisance, and in addition, that appellee would suffer a special injury distinct from that suffered by the public. (Crosby v. Owensboro and R. Railroad Co., 10 Bush, 291.) But a toll-gate is not *per se* a nuisance, and before the one appellant proposes to erect can be so considered, it must appear to be an unlawful obstruction of the turnpike road as a public highway. For if the erection of the gate at the place and for the purpose proposed is warranted by law, it is not a public nuisance, nor would the special injury complained of by appellee, even if it existed, avail in this action.

It appears that the western line of his land begins at a stake twenty-five feet east of the center of the road, and between the new gate and Sharpsburg, running thence northward along the east side of. the road eighty poles to a stake between the new and gate No. 8, and that the present way from his dwelling-house intersects the turnpike also between the two gates. So that the erection of the new gate will compel him either to pay toll in going to Sharpsburg, which he has not heretofore done, or else to make a new way from his dwelling-ing-house to the turnpike between the new gate and Sharpsburg.

We have thus the complaint urged, as one of the causes of action, and attempted to be sustained by proof, that the erection of the new gate will compel appellee to undergo the expense of making a new way by which to avoid paying for the use of appellant's road. We are unable to see how the erection of the new gate will in any way infringe appellee's rights, or inflict

upon him any civil injury. For to the extent he uses the road he ought to pay.

Nor has he any right of action for a possible and indeterminate injury that may result from the proximity of the new gate to his land. For the same ground might be relied on by every other person owning land adjacent to a turnpike road, and thus prevent the change of any toll-gate, however urgent or proper such change might be.

Gate No. 8 is situated opposite the grounds of the Bath County Fair and Trotting Association, to which there is an entrance from each side of the toll-gate, whereby the large number of persons attending the annual meetings are enabled to avoid the payment of toll, though having the use and benefit of appellant's road for four or five miles each way; and it seems the principal object in erecting the new gate is to compel those at least coming from the direction of Sharpsburg to the fair grounds to pay toll.

Under its charter appellant has the right to demand toll of all those traveling on its road in vehicles or on horseback; but no toll can be collected except at a gate. It would therefore seem manifest that the company should have the election to place their gates so as to most effectually and certainly collect what they are legally entitled to. For not only do those who purposely evade the payment of toll by going around the gates deprive the company of what they justly owe it, but lessen the ability of the company to keep its road in proper repair, in which the public is interested, and upon which the existence of the franchise depends.

To say that a toll-gate once established shall never

be changed, whatever may be the improvement and change in the country where the road is located, or however necessary it may be in order to enable the company to collect toll from those who use its road, is unreasonable and unjust. Because the object of a change, when made, is to more surely collect tolls from all who use the road; and of that no one has the right to complain.

By section 5 of the charter appellant has the right to acquire land upon which to erect toll-gates and houses for gate-keepers. But no power is given to acquire land for that purpose except by purchase, though the power is conferred to have sufficient land, stone and gravel condemned for the construction and repair of the road. Nor does appellant now seek to take any land for such purpose; but is proceeding to erect the gate entirely upon the land of the company. And the only question about which it seems to us there is any room for argument is, whether the toll-gate can be erected in the manner proposed without being an obstruction.

By the original charter the company was authorized to acquire land for its road sixty feet wide, thirty of which was to be graded and eighteen feet macadamized. But by amendments to the charter it was authorized to reduce the width to forty-five feet, of which twenty-four feet is for the grade, and sixteen feet for stone; though whether the change has ever been made does not appear.

It seems to us the Legislature evidently intended to authorize the company to erect gates within the limits prescribed, otherwise it would have been without authority to erect gates at all. Moreover, the gate and toll-house must of necessity be within that boundary

for the convenience of the public as well as to prevent persons from passing through without paying toll.

In our opinion the company has the right to erect the new gate upon its own right of way, so as to leave the portion covered with stone free for travel, without rendering itself liable for obstructing the highway.

It seems the site of the proposed new gate is less than five miles of the one south of Sharpsburg in the direction of Mt. Sterling. But there is more than the distance of ten miles between the new gate and the second one towards Mt. Sterling.

By the charter the company was authorized to erect a gate upon the completion of five miles, with the proviso that no one should be erected nearer than one mile from any town on said road.

There is no provision requiring the gates to be precisely five miles apart, nor would it be practicable on any road.

Whatever doubt there may be as to the meaning of the charter on this subject is removed by subsection 1, section 3, chapter 110, General Statutes, which authorizes gates to be at a less distance apart than five miles, though the toll must be always proportioned according to distance.

In our opinion appellant has the legal right to change the location of gate No. 8 to any point on its road between that place and Sharpsburg not nearer than one mile of that town, and may erect gates upon its own land, provided the part of the road used for travel is not obstructed.

Wherefore, the judgment is reversed, and cause remanded, with directions to dissolve the injunction and dismiss the petition.

Judge HOLT, not sitting.