·Commonwealth v. Boyle County Fiscal Court.

---

CASE 46—INDICTMENT AGAINST BOYLE ·COUNTY FISCAL COURT FOR SUF-
FERING A NUISANCE ON THE PUBLIC HIGHWAY.—MAY 14.

# Commonwealth v. Boyle County Fiscal Court.

### APPEAL FROM BOYLE CIRCUIT COURT.

INDICTMENT DISMISSED AND COMMONWEALTH APPEALS.   AFFIRMED.  .

COUNTIES—FAILURE TO KEEP HIGHWAYS ·IN REPAIR—FISCAL COURT
NOT SUBJECT TO INDICTMENT—PROSECUTION OF OFFICERS FOR NON-
FEASANCE.

Held:   The fiscal court of a county charged by statute with the
duty of keeping the public highways in repair, can not be
indicted as such, for failure to perform that duty, as neither the
county nor the fiscal court as its governing body, is subject to
indictment; the proper remedy being an indictment against the
officers composing the court for wilful neglect in the discharge of
their official duties.

CLIFTON J. PRATT, ATTORNEY GENERAL, FOR APPELLANT.

There can be no question that·the indictment is definite and
certain as to the particular circumstances of the alleged offense,
and that such an offense is punishable by indictment at common
law.

> If the fiscal court had acquired this turnpike road, and had con-
> trol over it, as alleged in the indictment, then it had a mani-
> fest duty to prevent the road from becoming obstructed and
> out of repair. Kentucky Statutes, sec. 4732. Bishop on Crim.
> Law, vol. 2, sec. 1285.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

The grand jury of Boyle county found a true bill and in-
dictment against "The Fiscal Court of Boyle County, Ken-
tucky," charging the defendant with having unlawfully suf-
fered and permitted a public nuisance on the public high-
way, "committed in manner and form as follows: The
said fiscal court of Boyle county, Kentucky, in the county
and State aforesaid, on the —— day of December, 1899,
A. D., before the finding of this indictment, did unlawfully
and willfully suffer and permit the turnpike road, a public
highway commonly known as the 'Danville and Perryville
Turnpike Road,' to become unfit for public travel and ob-
structed at a point on said road in front of and opposite
the premises of A. B. Wingate; did unlawfully suffer and
permit an engine and crusher to be left on said road at said
point, and rocks to be piled up on said road at said point,
and to so remain in said condition for an unreasonable
length of time, to wit, for the period of ten days, so as to
become inconvenient and dangerous for the purpose of the
traveling public, and a common nuisance of all good citizens
passing and repassing over and along said public highway;
the said public highway having been at the time acquired
by the said fiscal court, and said court having assumed au-
thority and ownership of same." A demurrer was sustain-
ed to the indictment, and the Commonwealth has appealed.

Section 144 of the Constitution provides that each county
shall have a fiscal court, which may consist of the judge of
the county court and the justices of the peace; or a county

may have three commissioners, to be elected from the county at large, who, together with the judge of the county court, shall constitute the fiscal court. Section 1834, Kentucky Statutes, provides: "Unless otherwise provided by law, the corporate powers of the several counties of this State shall be exercised by the fiscal courts thereof respectively." Section 1840, Kentucky Statutes, regulates the jurisdiction and powers of this court: "The fiscal court shall have jurisdiction to appropriate county funds authorized by law to be appropriated; to erect and keep in repair necessary public buildings, . . . and provide for the good condition of the highways in the county," etc. By the act of March 17, 1896, known as the "Free Turnpike Act," and constituting chapter 129, Kentucky Statutes, the several counties of this State were authorized to acquire, upon a vote first being had in favor of the proposition, all the turnpike roads of their county. The fifth section of that act expressly confers upon the fiscal court the power "to levy a tax from year to year upon all the estate of every kind assessed for State and county purposes, not to exceed in any year twenty-five cents on the one hundred dollars of taxable property, for the purpose of paying for and maintaining such roads as may be acquired under this act, and keeping them in repair." The sixth section in part provides: "All turnpike and gravel roads thus acquired or constructed shall become public roads, and shall be maintained and kept in repair by and through the provisions of the fiscal court. Said court may provide for keeping them up as is directed and permitted under the general road law, or it may adopt other rules for the maintenance, repair and management of the same. But said roads shall be free of toll to the traveling public." It will thus be observed that the sole care and supervision of this class of highways is imposed upon the

fiscal courts of the respective counties where this statute has been put in operation. It may be questioned whether the averments of the indictment in this case are sufficient to show that Boyle county had, under the provisions of the free turnpike act, acquired the title to the turnpike in question. It may likewise be questioned whether the charge in the indictment brings the case within section 4732 of the Kentucky Statutes, which provides: "When any turnpike company abandons its road and ceases to charge toll thereon, it shall be the duty of the fiscal court of the county in which any such road lies to take charge and control of same, and keep it in a safe and proper condition for public travel, and alter or discontinue same as other public roads."

But, having found that the duty of keeping the public highways of the county in proper repair is one imposed by the law of this State upon the fiscal courts of the respective counties, the question then arises, can the court be proceeded against by its name as such, without naming or joining the officers constituting it? In Montgomery Co. v. Menefee Co. Ct., 93 Ky., 33, (13 R., 891), (18 S. W., 1021), this court had before it the question of practice in a mandamus proceeding seeking the performance of a ministerial duty, namely, the levy of a tax to discharge the liability of the defendant county. The defendant was proceeded against as "The Menefee County Court." Said this court: "It seems to us that the delinquency complained of is the refusal of the individual officials intrusted with the performance of that duty to execute it. And such persons should be sued by name, in order that the court might determine whether or not they are the proper persons to perform that duty, and to command them to perform it." So, in the case at bar, if there is a duty imposed upon the court, it is one to be discharged by the officials constituting

that court, and, if process is desired, either corrective or compulsory, to insure the performance of the duty, or to punish for its neglect, the persons who are alleged to be derelict should be named and proceeded against. Another reason for this would seem to be that a proceeding such as here instituted against the court in its name would be a proceeding in reality against Boyle county, for by section 1834, as has been noted, the exercise by a county of its corporate powers is by the fiscal court thereof. The question then arises, may a county be sued or indicted as a municipal corporation might be for suffering or permitting a nuisance? For the purpose of government, the sovereign power of the State subdivides its territory and citizens into communities of convenient size, form, and population, designated as "counties." This is not done at the instance of the citizens of the particular locality, nor is their consent necessary. It is the method found in the experience of the Anglo-Saxon people, and especially in this country, to be the most convenient and suitable arrangement for the exercise of governmental functions by the State. While in most States, and in this State, they have been, by statute, clothed with some of the capacities and liabilities of corporate bodies, the more effectually to enable them to accomplish their governmental purposes, yet in this country counties are not corporations in the fullest sense of the term, though they are commonly called "quasi corporations." Downing v. Mason Co., 87 Ky., 208, (10 R., 105), 8 S. W., 264, 12 Am. St. Rep., 473; Layman v. Beeler, 113 Ky., 221, (24 R., 174), (67 S. W., 995); 7 Am. & Eng. Ency. Law (2d Ed.), 901, and cases cited; Lawrence Co. v. Chattaroi R. Co., 81 Ky., 225, (5 R., 36). Municipal corporations proper are called into existence either at the direct solicitation or by the free consent of the people who compose them. On this account

it may be supposed that they are held liable to actions upon contracts, whether expressly authorized by statute or not, as well as are made liable for torts of their agents, and to prosecution by indictment for permitting a nuisance within their jurisdiction. But county governments are superimposed upon the inhabitants by the sovereign and paramount authority of the State, and are created almost exclusively with a view to the policy of the State at large, for purposes of political organization and civil administration in matters of finance, of education, of provision for the poor, and of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct reference to the general governmental policy of the State, and are, in fact, but a branch of the general administration of that government. 7 Am. & Eng. Ency. Law, (2d Ed.), 903, and authorities cited. As said in Askew v. Hale Co., 54 Ala., 641, 25 Am. Rep., 730: "All powers with which the county is intrusted are the powers of the State, and all the duties with which they are charged are the duties of the State. If these were not committed to the county, they must be conferred on some other governmental agency." "It is in its very nature, character, and purposes public, and a governmental agency or auxiliary, rather than a corporation." To impose a fine upon the fiscal court would be to impose a fine upon the county, which is to visit upon the complainants in the prosecution the penalties which they invoke against the wrongdoer complained of. In the absence of an express legislative authority to that end, we hold that a county, either in its own name or in the name of its governmental body, to-wit, its fiscal court, can not be proceeded against by indictment for any purpose.

Commonwealth v. Boyle County Fiscal Court.

We have seen, though, that the duty of keeping up the
highways of a community is by law imposed upon the re-
spective counties, and by law conferred upon that branch
of officials within a county who may constitute its fiscal
court. These officials are invested with the necessary dis-
cretion as to the manner of discharging the duties of their
offices. But this discretion is not one that can set at naught
the duty. Their discretion consists in the manner how,
not in the matter of whether, the highway shall be kept in
fit condition for public use, in so far as the means given to
their hands by the law will suffice. Kentucky Statutes,
sec. 3748, provides: "Judges of the county courts, justices
of the peace, sheriffs, coroners, surveyors, jailers, assessors,
county attorneys and constables shall be subject to indict-
ment in the county in which they reside for misfeasance or
malfeasance in office, or willful neglect in the discharge of
official duties, and upon conviction shall be fined in any
sum not less than one hundred dollars nor more than one
thousand dollars; and upon such conviction the office held
by such person shall become vacant, and the judgment of
conviction shall so recite. But such officer shall have the
right to appeal to the court of appeals." This section of the
statute embraces the offenses of malfeasance, misfeasance,
and nonfeasance by public officers. Nonfeasance is the
willful omission by an officer to perform an official duty.
So it has been held in this State, under a provision of law
almost identical with the statute last quoted, that a jailer
may be indicted for permitting the jail to become so
filthy as to endanger the comfort, health, and lives of the
prisoners. McBride v. Com., 4 Bush, 331. We are of the
opinion that under the statutes above quoted the duty of
keeping the public highways of a county in repair is primar-
ily imposed upon the members of the fiscal court sitting

as the governmental tribunal of the county. The responsibility, if any, for a willful failure to discharge this duty, would rest upon the members individually, and not the county.

We therefore conclude that the circuit court properly sustained the demurrer in this case, and the judgment is affirmed.

The whole court sitting.