# County of Jefferson, et al. v. Louisville & Interurban Railroad Company.

(Decided November 18, 1913).

## Appeal from Jefferson Circuit Court
### (Chancery Branch, Second Division).

1. Fiscal Courts—Right to Revoke Authority Granted to Railroad Company to Build Track in Public Highway.—Where the Fiscal Court granted permission to a railroad company to build a track longitudinally in a public highway, it had authority to revoke this grant before the railroad company had acquired any vested rights under it or had exercised the privilege granted.

2. Fiscal Courts—Control of Highways—Is Consent of Necessary to Enable Railroad Company to Cross Highway with Tracks?— Whether a railroad company may construct its road even across a public highway without first obtaining the consent of the fiscal court is an open question.

3. Railroads—Right to Build Tracks in Public Highways—Construction of Section 768 of the Statute.—Sec. 768 of the statute, giving a railroad company the power to construct its road upon or across any public highway, does not give it authority to build its tracks longitudinally in the highways for any distance. It only gives it the power to lay its tracks upon and across the grade of a public highway.

4. Words—"Upon or Across."—These words in a statute authorizing a railroad company to construct its road "upon or across" a public highway do not give it the right to lay its tracks longitudinally in the highway.

A. SCOTT BULLITT, County Attorney, J. L. SULLIVAN, Assistant County Attorney, JAMES HEMPHILL, JAMES P. BROWN and CHARLES H. GIBSON for appellants.

HUMPHREY, MIDDLETON & HUMPHREY and CLARENCE DALLAM for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, the Louisville & Interurban Railroad Company, is a suburban electric railroad operating lines of road from Louisville to Shelbyville and from Louisville to Lagrange. The cars of the company run on a single track from the city limits for a distance of about three miles to Beechwood Junction. At this junction the lines of road running to Shelbyville and LaGrange separate.

A good many years ago the appellee company, or its predecessor, obtained from the then private owners of

the Louisville and Shelbyville turnpike road the right to and did lay a single track on this turnpike from the city limits to Beechwood Junction, or near there.

In April, 1912, the appellee, desiring to double-track its railroad from the city limits to Beechwood Junction, applied to the fiscal court of Jefferson County, that had then acquired the ownership and control of the turnpike road, for permission to lay another track on the right of way of the turnpike from the city limits to Beechwood Junction, and this privilege the fiscal court granted by an order of court.

Afterwards, in August, 1912, and before the appellee company had exercised any privilege or paid any consideration or expended any money under the order granting it permission to lay its track in the road, the fiscal court revoked and set aside the order made in April granting the company the privilege heretofore set out.

Sometime after the order had been entered by the fiscal court revoking the privilege granted to the company to occupy the road, the company, without asking or obtaining the consent of the fiscal court, proceeded to lay another track in this public road between the city limits and Beechwood Junction, or at least for a good part of the way. When the company took this action, the fiscal court had the employes engaged in the construction of the new line of road arrested for trespassing without right on public property under its control, and thereupon the company brought this suit in equity to enjoin the fiscal court from interfering with its right to lay its track in the road and to stay the criminal proceedings until the question of its right was determined. Upon hearing the case the lower court granted the company the relief sought and entered a judgment declaring that the company had the right to build the new track on the public road, and restraining the fiscal court from interfering with it. From this judgment the county of Jefferson and the fiscal court appeal.

In disposing of the case we do not find it necessary to spend much time in considering the question whether the fiscal court had the right to revoke its consent given to the company to lay this track. The company had not acquired any vested right under this grant at the time it was revoked, nor had it expended any money or other thing of value in exercising any privilege attempted to be conferred by the grant. This condition takes the case entirely out of the principle announced by the Supreme

Court of the United States in City of Louisville v. Cumberland Telephone & Telegraph Co., 244 U. S., 649, 56 L. Ed., 934. In that case the Legislature, in granting a charter to a telephone company, provided that it might "operate its telephone lines over, along and under any highway, street or alley in the city of Louisville with and by the consent of the general council of said city." Soon after the passage of this act the council granted to the telephone company the privilege of occupying its streets, and under this grant the company established its system, and the court under these circumstances held that the assent of the city, under which the telephone company constructed its system, could not thereafter be withdrawn. Not finding this opinion controlling we have no doubt that the fiscal court had authority to revoke the privilege it granted.

But aside from this, if the position of counsel for the company is correct, the fiscal court had nothing to do with granting the company the right to occupy this road. Of course if this is true the company did not and could not acquire any right by the action of the fiscal court in attempting to grant the privilege that was granted by the order subsequently revoked. According to the views of counsel whatever action the fiscal court took in the matter was a nullity, as the company had the right, independent of the fiscal court, to lay its track in the highway. Having no privilege it could grant, the order revoking the attempted grant of the privilege did not change the status of the parties at all.

So that, viewing the case from our standpoint or from the standpoint of counsel, it stands as if the fiscal court had never given or been asked to give its consent to the laying of this track in and along the public road, and the question for our decision is: Did the appellee company, without obtaining the consent of the fiscal court, have authority to thus take possession of the public road and lay its track in the traveled part or on the right of way of the road for a distance of perhaps two miles or for any distance?

It might be here noticed that the company has obtained from adjoining land owners the right to lay its track on their land for part of the way between the city limits and Beechwood Junction, and so it only intended to occupy the public road for probably a mile and a half or two miles of this distance although if its position is

sound it could occupy the road for three or ten or any number of miles.

The company claims that it has the right to lay its track in this public road without asking the advice or consent of the fiscal court, and that this right is conferred upon it by section 768 of the Kentucky Statutes relating to railroad companies. So much of this section as is pertinent to the matter in hand reads as follows:

"Every company shall possess the following powers, and be subject to the following liabilities and restrictions: * * * To construct its road upon or across any water course, private or plank road, highway, street, lane or alley, and across any railroad or canal; but the corporation shall restore the water course, private or plank road, highway, street, lane, alley, railroad or canal to its former condition, as near as may be, and shall not obstruct the navigation of any stream, or obstruct any public highway or street, by cars or trains, for more than five minutes at any one time; and shall construct suitable road and street crossings for the passage of teams by putting down planks or other suitable material between and on each side of the rails, the top of which shall be at least as high as the top of the rails of such road or street; and in case the road is constructed upon any public street or alley, the same shall be upon such terms and conditions as shall be agreed upon between the corporation and the authorities of any city in which the same may be, but such road shall not be constructed upon any public street or alley until compensation shall be made by the corporation therefor to the owner of the property adjoining such street or alley, and opposite where such road is to be constructed, either by agreement or in the manner provided by law."

This statute confers power upon the appellee company to construct its road upon or across any private or plank road or highway, but this, in our opinion, does not mean that a railroad company may construct its line of road and lay its tracks longitudinally on a public highway. It only means that it may lay its tracks across such highway. The words "upon or across" are used interchangeably and they mean substantially the same thing. It is not to be supposed that the Legislature of the State intended that railroad companies should appropriate to their own use so much of the public highways of the State as suited their needs. It is not to be presumed that the Legislature, in the enact-

ment of this statute, contemplated giving unlimited authority to railroad companies to run single or double tracks for miles, if they so desired, upon the public roads of the State, thus practically destroying the roads for the uses to which they were dedicated and set apart.

It appears in this record that 152 trains a day are run on this road between Louisville and Beechwood Junction, and it needs no argument to prove that running 152 trains each day on a public road greatly impairs the safety as well as the usefulness of the road for persons who travel in vehicles. The public highways of the State were primarily established for the use of travel on horseback and in vehicles of different kinds. They were not intended to be used lengthwise by railroad companies in the operation of their trains. If railroad companies can do what the appellee company claims it has the right to do in this case, then any railroad company in the State desiring to construct new lines of road can build them, if the route be desirable, in the center of any turnpike or public road in the State, for as long a distance as suits its interests or convenience, and run as many steam or electric trains over the track as it pleases. In many instances this would amount practically to an appropriation of the highway by the railroad company without any cost to it except such as might be incurred in putting and maintaining the surface of the highway occupied by its tracks in suitable condition for travel on horseback and in vehicles.

The traveling public have rights in these public highways that should be protected, and this right to travel them on horseback and in vehicles of different kinds should not be obstructed or attended with the constant danger that would necessarily follow the running of trains longitudinally in the highway. No construction that would authorize the character of occupation of the public highways of the State by railroad companies here contended for, or that would invest them with power to practically destroy public highways for public use in the manner in which such highways are used by the people of the State, should be adopted, if there is any escape from it.

The argument, however, is made that the use of the words "upon or across" any highway manifests a plain purpose to authorize railroad companies to construct their roads not only across the highway, but upon it

longitudinally. It is said that if it was only intended to confer power to construct roads across highways the word "upon" would have been omitted, and that unless the word "upon" is given the meaning contended for it has no meaning at all. Supporting this view attention is called to the fact that in speaking of the power to construct roads across a railroad or canal only the word across is used. But we find in the section when it comes to speak with particularity of the right to construct roads in streets that only the word "upon" is used, although it is quite clear that under this statute a road may be constructed "across" a street. It is also plain that whether a road is constructed "across" a street or highway, or constructed longitudinally with the street or highway, it is, nevertheless, upon the street or highway for the distance the construction extends, whether it be a few feet across the highway or street or for a mile in the street or highway. Of course a railroad could not well be constructed upon another railroad or canal lengthwise with the railroad or canal, and so authority was given to construct a road across another railroad or canal.

The power to construct a railroad across a public highway would not necessarily confer power to construct it upon the grade of a public highway, as a railroad might be constructed across a highway by an overhead bridge or by an underpass, and so the use of the word "upon" in connection with the word "across" is pertinent and valuable in removing any doubt there might be as to the right of a railroad to construct a track across and upon the grade of a public highway. Applied in this sense both these words have a useful meaning, and it is decidedly preferable that they should be given this meaning rather than the meaning that would permit railroad companies to take possession of any highways of the State they might need in their business.

The New York Court of Appeals had a somewhat similar matter before it in the case of People's Rapid Transit Co. v. Dash, 125 N. Y., 93, 10 L. R. A., 728. It appears from that case that the Transit Company wished to acquire certain lands for railroad purposes. The act under which the authority was attempted to be exercised by the Transit Company prohibited the building of any railroad "in, upon or along any of the streets or avenues of the city of New York." It was contended

that this act properly construed only prohibited the building of a railroad through the length of a portion of the street and did not reach the case of a railroad that merely crossed the street. In holding that the words "in, upon or along" were broad enough to and did prohibit the building of a railroad across the street, Judge Peckham speaking for the court said:

"There is a difference in the meaning of these words as used in the statute, and some effect should be given to such difference. If their meaning be construed to simply prohibit a railroad along the length of the street, no effect whatever is given to this difference. The words used are certainly apt to describe a railroad which crosses a street. Such a railroad is plainly for that distance both "in and upon" that street which it crosses. * * * It is not necessary that the railroad should pass along the surface of the street in order to be in or upon it. * * * There is no doubt that a railway under or elevated above the surface of a street is still a street railway in that street, and when the railway crosses the street either under or above the surface of the street, it is still in or upon the street at the point of crossing."

In this case the court, with the purpose of carrying out the legislative intent, gave to the words "in, upon or along" a broader meaning than they would naturally and ordinarily import in general usage, and in the case in hand we feel at liberty to give to the word "upon" a restricted meaning that will prevent railroad companies from doing something that it is reasonably certain the Legislature never intended they should do under authority of this act.

Another case illustrating the disposition of the courts to construe acts like the one here in question so as to carry out the intent is Arbenz v. Wheeling & Harrisburg R. R. Co., 33 W. Va., 1, 5 L. R. A., 371, where the court said that the word "upon," in a statute giving the railroad company the right to construct its road across, along or upon certain streets, did not necessarily mean that the road must be built on the grade of the street, but that it might be built in the street or out of or above or below the common level of the street, accordingly as the particular facts might require.

For the reasons indicated, we think that the power conferred by the statute upon a railroad company to construct its road upon a public highway is limited to

the right to construct it upon the highway in crossing it, and that a railroad company has no authority under the statute to construct its line of road for any distance lengthwise in and upon the highway. This being our view of the matter, the company, in attempting to construct this road longitudinally in and upon this public highway, was committing a trespass.

It may be well to add that nothing we have said in disposing of this case is to be construed as meaning that a railroad company may construct its road even across a public highway without first obtaining the consent of the fiscal court, as we have not considered at all the powers of the fiscal court in controlling the use and occupation of the highways under their care.

Wherefore, the judgment is reversed, with directions to dismiss the petition.

Whole court sitting.