## Illinois Central Railroad v. Covington, et al.

(Decided November 17, 1925.)

### Appeal from Graves Circuit Court.

1. Railroads—Right of Railway to Use Streets Not Superior to Public Right.—Right of railway to construct and operate railroad across public street, given under Ky. Stats., section 768, subdivision 5, is not superior to right of public using street for which it was dedicated, so that railway cannot use street in such manner as to exclude others therefrom.

2. Railroads—Parties Failing to Show Special Injury Cannot Enjoin Railway's Use of Streets.—Action to enjoin railway from crossing public street in switching cars as a public nuisance cannot be brought by parties who fail to show that they suffered any injury distinct from that suffered by general public.

3. Railroads—Use of Street for Switching Purposes Held Not Public Nuisance.—Use by railway of public street for switching purposes, under Ky. Stats., section 768, subsection 5, occasioning only inconsequential delay to parties desiring to cross street, was not such unreasonable interference with public use as to constitute public nuisance.

ROBBINS & ROBBINS and TRABUE, DOOLAN, HELM & HELM for appellant.

HESTER & HESTER for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Mayfield, the county seat of Graves county, Kentucky, is a city of the fourth class. Broadway street runs

east and west through the city. Appellant, Illinois Central Railroad Company, owns and operates a line of railroad running through the city and its tracks run north and south. Its passenger depot is located south of Broadway and its freight depot and freight yards are located north of that street. As its tracks are arranged in its yards the main line, the passing track and two side tracks cross Broadway. Spur tracks lead to industrial plants both north and south of Broadway.

Appellees, ten citizens of Mayfield, instituted this equitable action against appellant railroad company to enjoin it from crossing Broadway in switching cars and in making up trains, upon the theory that such use of that street is a public nuisance. Their right to the relief sought was denied by answer. The chancellor adjudged that appellant could switch its freight cars over Broadway in making up its trains and distributing its cars for an hour each day between sun up and sun down, and adjudged the use of the crossing for that purpose for more than an hour during any day to be a public nuisance and enjoined appellant from so doing. Appellant prosecutes an appeal, and appellee prosecutes a cross-appeal.

It appears that the general council of the city of Mayfield has provided by ordinance that appellant may not for more than five minutes at any time obstruct any of the streets of the city with its trains or cars. Appellant appears to own the land on which its depots and yards have been constructed. It does not appear from the record that it has made any change in the location of its tracks within the last thirty years. Mayfield does not seem to be a terminal or division point for appellant's railroad. It appears that only such switching is done in its yards in Mayfield as is necessary to cut from freight trains the cars containing freight consigned to that city and to place them at the appropriate place for unloading, and as is necessary to incorporate into freight trains leaving the city such cars as have been emptied and such as have been loaded with freight to be shipped from that point. It appears that a local freight runs into Mayfield in the morning and that all of the switching incident to the necessary moving of freight cars in the yards in Mayfield is done by the crew and with the engine of that train. The evidence discloses that from an hour to three hours per day is consumed in that operation, depending

upon the volume of business. In doing this switching single cars, cuts of cars and at times entire trains are moved backward and forward across Broadway. No witness testified to any instance in which in the switching operations the Broadway crossing has been blocked for more than five minutes, except one instance occasioned, as the cross-examination of the witness would indicate, by some unavoidable breakdown. It does not appear that in the history of appellant's operation of its railroad in Mayfield anyone has ever been injured or killed by the switching operations. It appears to keep a flagman stationed at this crossing at all times to control traffic and protect it from the operation of the trains. The evidence discloses that Broadway is perhaps the most traveled thoroughfare into Mayfield and that it is used daily by many people, both afoot and in vehicles. It appears that at such times as trains are passing or at such times as the crossing is being used in switching cars or cuts of cars across Broadway, traffic on that street necessarily has to stop until the train has crossed over. No one testified as to ever having been held up at that crossing for a longer period than five minutes, and as a general thing when interfered with by passing or switching trains traffic is blocked for a much shorter time than that. No witness has testified as to any damage he has ever been caused to suffer by being required to wait until the passing train could move off of Broadway before proceeding. Their sole complaint is that they, together with all others who, traveling Broadway, reach appellant's railroad tracks, at times are compelled to wait until a passing train crosses that street before they may proceed on their way.

Subsection 5 of section 768, Carroll's Kentucky Statutes, confers upon appellant company the power—

"To construct its road upon or across any water course, private or plank road, highway, street, lane or alley, and across any railroad or canal; but the corporation shall restore the water-course, private or plank road, highway, street, lane, alley, railroad or canal to its former condition, as near as may be, and shall not obstruct the navigation of any stream, or obstruct any public highway or street, by cars or trains, for more than five minutes at any one time."

While the power to construct and operate its railroad across the street in question is given by the statute above and can not be questioned, it must be conceded that appellant's right so to do is not superior to the right others have to use the street for the purpose for which it was dedicated. Appellant can not so use the street as to amount to a conversion of it to its exclusive use and the exclusion from it of others having the same right to use it that appellant has.

If it should be conceded that appellant's use of Broadway in its switching operations is unreasonable and operates unreasonably to exclude others from the use of the street, such use of Broadway by appellant would constitute a public nuisance. If, therefore, we should concede that appellant's use of the street in question by its switching operations constitutes a public nuisance, the question then arises whether appellants have shown themselves entitled to the relief they seek.

In Barr, etc. v. Stevens, etc., 1 Bibb 292, it was written:

"Upon general principles, that common interest, which belongs equally to all, and in which the parties suing have no special or peculiar property, will not maintain a suit. Thus a public nuisance is not the subject of a suit by a private individual, unless he has sustained some special injury thereby."

In Cosby, etc. v. Owensboro and Russellville Railroad Company, 10 Bush 288, it was written:

"If it be conceded that the railroad company occupies and uses Lewis street without right, and that such use and occupation is a public nuisance, still the appellants can not have relief at the hands of the chancellor unless they are directly affected by it.

"Private individuals seeking relief against a public nuisance must show that they suffer an injury distinct from that suffered by the general public, and that said injury is one that the public, in the promotion of the general interest, has not the right to inflict upon them without compensation."

The principle of law so written has been reiterated in Corley v. Lancaster, 81 Ky. 171; Seigfried v. Hays, 81

Ky. 377; Maysville & Mt. Sterling Turnpike Road Company v. Ratliff, 85 Ky. 244; Kraver v. Smith, 164 Ky. 674, 177 S. W. 286; Husband v. Cotton, 171 Ky. 177, 188 S. W. 380; L. R. A. 1917A, page 1210; Maxwell v. Fayette National Bank of Lexington, 186 Ky. 625, 217 S. W. 690. In the Maxwell case it was said:

> "We therefore have no trouble in sustaining the chancellor's finding of fact, that the obstructions placed in the sidewalk by defendant, even if a public nuisance, have occasioned the appellants no special or peculiar injury. That under such circumstances they are not entitled to injunctive relief to abate a nuisance is the clearly established rule in this jurisdiction."

Appellees fail wholly to establish that by appellant's switching operations backward and forward across Broadway they have suffered any injury distinct from that suffered by the general public. They do not appear to own abutting lots, ingress to and egress from which have been affected by appellant's switching operations. No other element of damage or injury distinct from that suffered by the general public has been shown. Wherefore, they failed to manifest a right to the relief sought.

In fact, no damage or injury of any character has been shown to have resulted to appellees or anyone else occasioned by the inconsequential delay while waiting for Broadway to be cleared of appellant's trains or cars. The most that can be said is that they at times are annoyed by a slight delay. The facts with reference to this crossing, as shown by the record, disclose that appellees and the general public daily encounter the same condition there that those traveling the streets of populous cities encounter, where at street intersections traffic is controlled by a traffic officer or by automatic traffic signal. When those traveling the one street are given the right of way those traveling the other must wait.

The record herein wholly fails to establish that appellant uses its tracks across Broadway in Mayfield in such a way as to unreasonably interfere with the public in general, or appellees in particular, in their right to use that street for the purposes for which it was dedicated; or that its use of its tracks across that street is a

public nuisance. But, even if such were the case, appellees wholly failed to establish that they have suffered an injury distinct from that suffered by the general public and, therefore, failed to manifest their right to the relief sought by them. It follows that the judgment of the chancellor enjoining appellant from using its tracks across Broadway for switching purposes for exceeding an hour each day is erroneous.

Wherefore, the judgment is reversed and this cause remanded, with direction that the petition of the appellees be dismissed.