**JEFFERSON COUNTY et al. v. LOUIS-VILLE & N. R. CO.**

Court of Appeals of Kentucky.

Dec. 21, 1951.

Rehearing Denied Feb. 22, 1952.

Lawrence G. Duncan, J. W. Jones, Louisville, for appellants.

H. T. Lively, Ernest Woodward, Louisville, for appellee.

COMBS, Justice.

The Louisville and Nashville Railroad Company plans to construct a railroad track from what is known as its "Strawberry Yards" in Jefferson County to an industrial plant now being constructed by the General Electric Company near the small town of Buechel, in Jefferson County. The proposed new track will be 5.75 miles in length, and will cross three roads within the County. The Company filed application with the Jefferson County Fiscal Court for permission to lay its track across the three roads at grade level. The Fiscal Court denied the application for the expressed reason that it is "unwilling to authorize additional crossings at grade." It appears that the Fiscal Court has adopted the general policy of requiring road crossings constructed in Jefferson County in the future to be by underpass or overpass.

The County filed this suit for an injunction to prevent the Company from laying its track across the roads in question at grade level. The Company, by answer and counterclaim, asked that the County be enjoined from interfering with it in the construction of its track across the roads, and also that the Fiscal Court be required to approve its application to cross the roads at grade level. The trial judge held, in a well-reasoned opinion, that the County has no legal authority to prevent the Company from laying its track at grade level across the three roads. Judgment was entered accordingly, and the County appeals.

Two grounds are urged for reversal: (1) The proposed crossings will constitute a public nuisance, which the County may prevent by injunction; and (2) the proposed construction is an extension of the Company's line of railroad, and no certificate of public convenience and necessity has been obtained from the Interstate Commerce Commission, as required by the Federal Transportation Act. 49 U.S.C.A. § 1.

It should be noted at the outset that the three roads in question are county roads, not a part of the primary road system of the state, and not within the corporate limits of the City of Louisville. The Highway Department has statutory authority under certain circumstances to eliminate hazardous grade crossings over roads which are part of the state primary road system. The Legislature has also conferred on cities of the first class limited authority to accomplish the same purpose as relates to hazardous crossings within the city. But these statutes are not applicable here. It is stated in the County's brief that "Appellants do not claim that Jefferson County, through its Fiscal Court, or at all, has the power, such as is possessed by the State under KRS 177.120, and by a city of the first class under KRS 93.280, to prevent a railroad company from crossing a county road at grade."

The Company relies chiefly upon KRS 277.060, which reads in part:

"(1) Every railroad company may: * * *

"(h) Construct its road upon or across any private road, highway, street, lane or alley, and across any railroad, canal or watercourse.

"(2) Every railroad company shall restore to its former condition, as near as may be, any private road, highway, street, lane, alley, railroad, canal or watercourse upon or across which it has constructed its road, and shall maintain the same in that condition within the right of way of the railroad company. It shall construct suitable road and street crossings for the passage of traffic by putting down planks or other suitable material between and on each side of the rails, the top of which shall be at least as high as the top of the rails."

KRS 179.290 provides: "Every railroad company, including traction line companies, which obstructs any public road, shall as far as possible put the road so obstructed in as good condition at every crossing of the railroad as it was before the obstruction, within six months after the completion of the construction, repair or use of the railroad."

■ We have consistently said that under these two statutes a railroad company may lay its tracks across a county road at grade by complying with the statutory requirements in regard to the construction of the crossing and thereafter restoring the road as nearly as possible to its original condition. Louisville & Nashville R. R. Co. v. Commonwealth, 149 Ky. 459, 149 S.W. 898; Louisville and Nashville Railroad Company v. Hopkins County, 153 Ky. 718, 156 S.W. 379; County of Jefferson v. Louisville and Interurban Railroad Company, 155 Ky. 810, 160 S.W. 502; Illinois Central Railroad v. Covington, 211 Ky. 825, 278 S.W. 109.

■ Although KRS 67.080 enjoins the Fiscal Court with the duty of providing for the "good condition of the highways in the county", it is clear that a county has no statutory authority to prevent a railroad from crossing a county highway at grade level.

■ The County does not stress its contention that the proposed crossings will constitute a public nuisance, and we find no merit in this argument. If the crossings are constructed and maintained in a legal manner, under a statutory right, they cannot be said to constitute a public nuisance. Commonwealth v. Phoenix Amusement Co., Inc., 241 Ky. 678, 44 S.W.2d 830; Illinois Central Railroad v. Covington, 211 Ky. 825, 278 S.W. 109. The case of Chesapeake and Ohio Railway Company v. City of Bellevue, 239 Ky. 61, 38 S.W.2d 943, cited by the County on this point, is not applicable. In that case the railway company made the street impassable for vehicular traffic by the construction of a fill in the street.

The principal question in the case is whether the Railroad Company is required to obtain a certificate of public convenience and necessity from the Interstate Commerce Commission as a condition precedent to the construction of the proposed track. The answer to this question hinges on whether the proposed track is an extension of the Company's line, or is merely a spur or industrial track, as those terms are used in the Federal Transportation Act. 49 U.S.C.A. § 1. Section 1 (18) of the Act provides: "No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, * * *."

Section 1(22) provides: "The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, * * *."

A collateral question is whether the County is entitled to raise this question, as a party in interest within the meaning of the Act. Section 1(20) provides: "* * * Any construction, operation, or abandonment contrary to the provisions of this paragraph or of paragraphs (18) or (19) of this section may be enjoined by any court of competent jurisdiction at the suit of the United States, the commission, any commission or regulating body of the State or States affected, or any party in interest * * *."

The Company strenuously insists that the County is not a "party in interest" within the meaning of the Act, and is not entitled to raise the question. As heretofore noted, the Fiscal Court has the statutory duty of providing for the "good condition of the highways in the county." It has been held that members of the Fiscal Court are subject to indictment for failure to keep county roads in repair. Commonwealth v. Boyle County Fiscal Court, 113 Ky. 325, 68 S.W. 116. In the case of Greenup County v. Maysville & B. S. R. Co., 88 Ky. 659, 11 S.W. 774, 775, we said: "A county is a *quasi* corporation. It may sue and be sued in many instances. It controls the highways within it for the benefit of the public. When they are established, the use of the land passes from the owner, and vests in the county for the public use. They are under its control. It may, upon a proper state of case, discontinue one. It is the party in interest, and may therefore sue for an injury to one. If it could not do so, the public would be remediless, however great the wrong."

In the case of Flying Tiger Line v. Atchison, T. & S. F. Ry. Co., D.C., 75 F.Supp. 188, 193, it was said: "From the foregoing it seems clear to me that the tests to be applied in determining who or what is a party in interest, as announced to date by the Supreme Court, are whether or not a party has a clear legal right which will be directly affected, * * *."

We conclude, as did the trial judge, that the County is a "party in interest" within the meaning of the Federal statute.

This brings us to the question: Is the proposed new track an extension of the Company's line of railroad, or is it merely a spur or industrial track within the meaning of the Federal statute?

It is admitted that the main purpose for the new track is to serve the plant of the General Electric Company. From the point of beginning, the track will run for a distance of 1.3 miles adjacent to an area which has been zoned as "E-3 Heavy Industry," but it is not shown that any freight tonnage will be obtained from the territory between the Company's Strawberry Yards and the General Electric Company's plant. It is shown by the pleadings that this plant is now being served by the Southern Railway Company. It is stated in the L. & N's. answer and counterclaim that as a condition to locating the plant at its present site, General Electric Company required and was given assurance by Southern and L. & N. that both companies would connect with and render common carrier freight service to and from the plant.

The County places considerable reliance on the case of Texas & Pacific Railway Co. v. Gulf, C. & S. F. Railway Co., 270 U.S. 266, 46 S.Ct. 263, 266, 70 L.Ed. 578. It was held in that case that, under the circumstances there shown, a proposed new line of track 7½ miles in length was an extension and not a spur or industrial track within the meaning of the Federal Transportation Act. The controlling feature in that case was the fact that the proposed new line would be in direct competition with another railroad system, which was the complainant in the case. It was said in the opinion, written by Mr. Justice Brandeis: "By that measure, (Federal Transportation Act) Congress undertook to develop and maintain, for the people of the United States, an adequate railway system. It recognized that preservation of the earning capacity, and conservation of the financial resources, of individual carriers, is a matter of national concern; that the property employed must be permitted to earn a reasonable return; that the building of unnecessary lines involves a waste of resources, and that the burden

of this waste may fall upon the public; that competition between carriers may result in harm to the public, as well as in benefit; and that, when a railroad inflicts injury upon its rival, it may be the public which ultimately bears the loss. * * *"

In this case Southern is not objecting to the proposed construction, and both L. & N. and Southern have agreed with General Electric that they will connect their lines with its plant. It might be noted that the plant is being constructed for the purpose of manufacturing essential material for the United States Air Force, and L. & N. argues with some degree of logic that it is a matter of public interest that the plant have access to more than one line of railroad.

We think the cases of Idaho v. United States, D.C., 10 F.Supp., 712, 715, and Missouri, K. T. R. Co. v. Texas & N. O. R. Co., 5 Cir., 172 F.2d 768, are more nearly in point with this case. In the Idaho case it was held that a railroad track nine miles in length, built to serve a single industry, was a "spur" or "industrial" track within the meaning of the Federal statute. In that case the Court said: "Each case, of course, turns upon its own particular facts."

In the Missouri, K. T. R. Co. case it was held that a proposed line of track 5000 feet in length across a two-square mile area near a city, to serve three or four industries and to be built in accordance with promises inducing industries to locate in that area, was not an "extension" of the railroad's line, but was a "spur" or "industrial" track.

Under the circumstances of this case, we are of the opinion the proposed new track is a "spur" or "industrial" track within the meaning of the Federal Transportation Act, and that it is not necessary that the Company obtain a certificate of public convenience and necessity before constructing the line.

We are fully cognizant of the fact that railroad crossings over public highways at grade level are a hazard to the traveling public, and that everything

practicable should be done to eliminate such crossings. This is a matter, however, which addresses itself to the Legislature and not to the Judiciary. The Legislature has seen fit to give railroad companies statutory authority to lay their tracks across county highways at grade level. A county has no authority to prevent such crossings so long as the railroads comply with the terms of the applicable statutes.

The judgment is affirmed.