**CITY OF HARRODSBURG, Kentucky,**
**Appellant,**

v.

**SOUTHERN RAILWAY COMPANY,**
**Appellee.**

Court of Appeals of Kentucky.

May 29, 1958.

F. D. Curry, Harrodsburg, for appellant.

W. Earl Dean, Harrodsburg, Louis Seelbach, Louisville, for appellee.

CLAY, Commissioner.

This is a suit by Southern Railway Company to enjoin the City of Harrodsburg from enforcing an allegedly void ordinance. On motion for summary judgment, the Chancellor declared the ordinance invalid and granted the relief prayed by Southern. The controversy involves the right of the City to require Southern to provide an underpass or overpass at one of its nine crossings within the city limits.

Harrodsburg is a city of the fourth class. Southern's tracks bisect the town. On occasion a long moving freight train will occupy all of the municipal crossings simultaneously, thereby blocking traffic between the two parts of the City. To alleviate this condition the City enacted the ordinance in question, which required Southern to make a physical change in at least one of its crossings so that it would always be open to vehicular traffic.

A fourth class city has no specific statutory authority to require a railroad to eliminate a grade crossing. The City contends, however, that it has this right (1) by virtue of the common law, or (2) under its statutorily conferred police powers.

On the first point, the City relies on Chesapeake & O. Ry. Co. v. City of

Bellevue, 239 Ky. 61, 38 S.W.2d 943. Therein it was decided that a municipality could invoke *the common law* and require a railroad company to restore a street which it had *permanently obstructed* in the building of its line, which restoration necessitated the building of an underpass. Clearly a city may prevent a railroad or anyone else from permanently obstructing its streets. That is not the situation we have here. What we have may be termed a temporary operating obstruction, which is implicitly authorized both by statute (KRS 277.060(1) (h)) and the original franchise granted Southern by the City in 1887.

■ The legislature has undertaken to regulate the subject of grade crossings by specific statutes. KRS 277.060(1) (h) and (2) authorizes railroad companies to build their lines "upon or across" city streets. It has been recognized that this statute grants railroads the right to cross streets at grade level. Louisville & N. R. Co. v. Hopkins County, 153 Ky. 718, 156 S.W. 379; Jefferson County v. Louisville & N. R. Co., Ky., 245 S.W.2d 611. (It may be noted that an 1887 ordinance of the City of Harrodsburg, granting a franchise to Southern, required it to conform the grade of its tracks to the established grade of the city streets.)

■ The legislature has specifically authorized cities of the first and second class to eliminate grade crossings upon certain conditions and according to detailed procedure. (KRS 93.280 et seq., and 94.-550 et seq.) It is thus apparent the legislature has undertaken to exercise complete control of grade crossings and their elimination by statute. This clearly abrogates any common-law rights of cities with respect thereto.

■ We will now examine the City's alleged statutory authority. A municipality possesses only those powers expressly granted by the legislature, or those necessarily implied and properly incident to the granted powers. City of Morganfield v. Leo Wathen Drug Co., 202 Ky. 641, 261 S.W. 12

In Chesapeake & O. Ry. Co. v. Harmon, 153 Ky. 669, 156 S.W. 121, 45 L.R.A.,N.S., 946, it was held that a fifth class city did not have a general police power to require a railroad to maintain safety gates at a city crossing. In the opinion it was stated that such power must be "expressly conferred" by the legislature.

The City contends the Harmon case has been overruled in Illinois Cent. R. Co. v. McGuire's Adm'r, 239 Ky. 1, 38 S.W.2d 913. It was there decided that since KRS 96.070 conferred upon a fourth class city "supervising control over the use of" streets, the city could by ordinance require a flagman to be kept at a crossing. If this latter case does cast some doubt upon the soundness of the Harmon opinion, it is not controlling here.

■ We may concede that Harrodsburg, under KRS 96.070, may reasonably regulate the *use* of a street crossing by a railroad. The ordinance in question does not purport to regulate such use. It proposes to eliminate the crossing entirely. Both the Harmon and the McGuire cases involved action taken by a city to control the crossing *as it existed*. Clearly KRS 96.070 cannot be stretched to authorize action by a city which is outside the scope of the statute and completely foreign to its purpose.

■ The City further contends that the situation in Harrodsburg constitutes a nuisance, and that KRS 86.150 gives cities of the fourth class power to abate a nuisance. It is generally recognized, however, that normal, prudent, authorized operation of a railroad over a properly constructed and maintained crossing is not a nuisance. See Louisville & N. R. Co. v. Commonwealth, 158 Ky. 773, 166 S.W. 237; Chesapeake & O. Ry. Co. v. Scott, 197 Ky. 636, 247 S.W. 735; Illinois Cent. R. R. Co. v. Covington, 211 Ky. 825, 278 S.W. 109; Jef-

ferson County v. Louisville & N. R. Co., Ky., 245 S.W.2d 611. The City's answer does not allege facts sufficient to show the authorized use of the crossings by Southern constitutes a nuisance. The ordinance cannot be sustained under the authority of KRS 86.150.

 After the filing of this suit, the City enacted another ordinance specifically declaring the crossing condition to constitute a nuisance. The Chancellor refused to permit the City to file an amended answer pleading this ordinance. The ruling of the court was proper. The question presented in this controversy is whether or not the original ordinance constitutes a proper exercise of power by the municipality. The independent question of whether or not the condition may be formally declared a public nuisance involves factual and legal questions not pertinent to the issue involved in this proceeding.

The judgment is affirmed.