## Chesapeake & Ohio Railway Co. v. D. O. Harmon, Police Judge.

(Decided May 9, 1913.)

### Appeal from Floyd Circuit Court.

1. Municipal Corporations—Railroads—Erection of Gates at Street Crossings.—Although section 3490, subsection 25, Kentucky Statutes, confers upon the board of council of cities of the fourth class authority to require railroad companies to erect and maintain safety gates at points where their tracks cross the streets, such authority has been withheld by the legislature from cities of the fifth class; and, in the absence of such statutory authority, the board of council of a city of the fifth class cannot, by ordinance, require a railroad company to erect and maintain safety gates at such crossings.

2. Municipal Corporations — Railroads —Crossings—Signals.—Until such power is conferred by the legislature, cities of the fifth class must, as authorized by section 786 and subsection 3704, Kentucky Statutes, content themselves with the passage of such proper ordinances as will compel railroad companies, in running trains

through their limits and approaching crossings therein, to adopt such reasonable signals and such reasonable precautions as to speed, as will give warning of their coming and reasonable opportunity to persons using the streets to avoid collision with them.

HARKINS & HARKINS, WORTHINGTON, COCHRAN & BROWNING and F. T. D. WALLACE for appellant.

MAY & MAY, B. F. COMBS, JNO. C. HOPKINS, JR., WILL H. LAYNE and S. C. FERGUSON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

On January 7, 1913, the board of council of Prestonsburg, a city of the fifth class, passed the following ordinance.

"The city council of the City of Prestonsburg, Ky., do ordain as follows:

All railroad companies or persons engaged in operating or in control of any line of railroad extending over any roads or streets in the city of Prestonsburg, Ky., shall at each and all of said crossings, where locomotives or trains of any kind are run, provide, maintain and operate safety gates of the design and mechanism suitable for the protection of persons riding, driving or on foot from trains crossing and locomotives approaching said crossings. Any railroad company, corporation or person failing to provide, maintain and operate the safety gates required by the provisions of this ordinance shall on conviction, be fined One Hundred Dollars ($100) for each day they fail to do so."

This ordinance went into effect and became operative at the expiration of thirty-six hours after its passage.

Appellant, Chesapeake and Ohio Railway Company, owns and operates a line of railroad which passes through the City of Prestonsburg, and in doing so crosses some of its streets or highways.

It failed to erect and maintain gates at any of such crossings and because of such failure a warrant, or warrants, were issued against it for the violation of the ordinance in question, by the appellee D. O. Harmon, Police Judge of Prestonsburg. Following the issuance of such warrant or warrants, appellant brought this action in the Floyd Circuit Court attacking the validity of the ordinance, seeking by injunction to restrain the city authorities from enforcing it and the Police Judge from proceed-

ing with the prosecutions set on foot by the warrants issued against it. A temporary injunction was granted as prayed in the petition. Appellee answered traversing the averments of the petition, alleging the proper passage of the ordinance, the necessity therefor, and the authority of the city council to enact it. Evidence was taken by both parties and, upon a hearing, the circuit court by its judgment sustained the validity of the ordinance, the prosecutions instituted for its enforcement and dissolved the temporary injunction. From that judgment this appeal is prosecuted.

Appellant's attack upon the ordinance is bottomed upon numerous grounds, of which only the following need be mentioned.

First: That the council were without authority to pass it, and it is unreasonable and oppressive in meaning and effect because it requires of appellant the performance of duties unnecessary to the safety of the citizens of Prestonsburg.

Second: That it was unreasonably made operative in so short a time after its passage that it was impossible for appellant to comply with its provisions before the prosecutions were set on foot against it, as it would take three months' time for it to install for operation at its crossings in the city the safety gates required by the ordinance.

Third: That the ordinance is unreasonable and oppressive because its enforcement would impose upon appellant, unnecessary, unreasonable and unusual cost, to erect and maintain the safety gates and thereby deprive it of its property without due process of law, contrary to the Constitution of the United States and that the State of Kentucky. We have repeatedly held that if a city ordinance is invalid, one who is affected by it has a right, in order to prevent an irreparable injury and multiplicity of prosecutions, to go into a court of equity for relief. Boyd v. Board of Council of City of Frankfort, 117 Ky., 212; Newport v. Newport Bridge Company, 90 Ky., 193; South Covington, et al. v. Berry, et al., 93 Ky., 43. Therefore in bringing the present action appellant has not mistaken its remedy.

If appellant's first contention, that the common council of Prestonsburg were without authority to pass the ordinance, should be sustained, a decision upon the other grounds urged will be unnecessary. While the ordinance by its terms requires the erection of safety gates at all

railroad crossings within the city limits, it appears from the record that the prosecutions instituted against appellant were because of its failure to provide such gates at only one of these crossings, which is situated near the end of a bridge for pedestrians and vehicles, which crosses the Big Sandy River and connects the two sections of the city lying on either side of the stream.

The crossing referred to is used more than any other in the city, and the danger attending its use seems to be materially increased by the noises emanating from a coal tipple near it, which tend to prevent persons using the crossing from hearing the noises and signals made by approaching trains. Although it appears that an accident has never happened at this crossing during the more than eight years appellant's trains have been running through Prestonsburg, it must be conceded that the crossing is a dangerous one at which accidents are at all times probable; and whatever may be said as to the unreasonableness of the ordinance in requiring safety gates at all railroad crossings in the city, as applied to this particular crossing, its provisions, if enforceable, are not unreasonable. But this feature of the case will be laid aside for consideration of the more important question, had the council the power to require the erection and maintenance of the safety gates at any railroad crossing within the limits of the city? We must look to the provisions of the Kentucky Statutes with respect to cities of the fifth class to ascertain whether the council of Prestonsburg possess the power attempted to be exercised by them, in adopting the ordinance complained of, and, after a careful examination of those provisions we are constrained to hold that they fail to disclose the existence of such power.

It seems to be conferred by the statutes, though in differing language, upon cities of each class above that of the fifth, but withheld from those of the fifth and sixth class. Thus in section 3490, subsection 25, Kentucky Statutes, relating to cities of the fourth class, we find it provided:

"The board of council may grant the right of way over the public streets or public ground of the city to any railroad company or street railroad company, on such condition as to them may seem proper, and shall have a supervising control over the use of same, and shall regulate the speed of cars and signals and fare on street cars; * * * and may compel any railroad company

to erect and maintain gates at any or all street crossings, and to prevent railways from blocking or obstructing the streets or public ways of the city, and to fix penalties for the violation of these provisions: *Provided,* That nothing herein shall be construed to prevent any property owner, whose property may abut on a street on which a railway may be granted a right of way from recovering from such railway any damage that may be done to said property by the occupation or uses of said street by such railroad."

In C. & O. Ry. Co. v. Maysville, 24 R. 615, the validity of an ordinance of the City of Maysville requiring the erection of safety gates at points where the streets were crossed by the railroad, was attacked by the Chesapeake and Ohio Railway Company. Among other objections to the ordinance, it was urged that the city council had no authority to pass it and that only the railroad commission of the state could compel the erection of safety gates at such crossings. In overruling this contention we said:

"'Subsection 25 of section 3490, Kentucky Statutes, which is a provision of the charter of cities of the fourth class, to which appellee belongs, expressly provides that the board of council may compel any railroad to erect and maintain gates at any and all street crossings. It is clear that under this provision in the charter the city council were authorized to adopt the ordinance complained of. The railroad commission are only authorized by section 774 of the Kentucky Statutes to require the erection and maintenance of gates at highway crossings within a mile of the corporate limits of any city or town of this Commonwealth. The city authorities are exclusively clothed with the power to regulate this matter within the city limits."

As the authority conferred upon cities of the fourth class by the section, *supra,* is not found in any provision of the charter of cities of the fifth class, it is obvious that the council of the city of Prestonsburg were without authority to pass the ordinance of which appellant complains. We are not called upon to decide whether the Legislature, as it was clearly competent for it to do, should have conferred upon the city council of cities of the fifth class authority to compel railroads to erect and maintain gates at street crossings within the city limits, but whether it has granted such authority; or whether

such authority is implied from any provision found in the statutes with reference to cities of that class.

It is insisted for appellee that authority to pass the ordinance in question is conferred by subsections one and seven, section 3637, Kentucky Statutes, applicable to cities of the fifth class; also from the general police power appertaining to the government of such a municipality. The first of the subsections referred to provides: "The city council of such city shall have power to pass ordinances not in conflict with the Constitution or laws of this State or of the United States." The last declares that the council are empowered "to do and perform any and all acts and things necessary and proper to carry out the provisions of this chapter, and to exact and enforce, within the limits of such city, all other local, police, sanitary and other regulations as do not conflict with general laws."

The power claimed for the city of Prestonsburg is not conferred by the subsections of the statute referred to.

In C., N. O. & T. P. Ry. Co. v. Commonwealth, 126 Ky., 712, we held that these provisions, which apply equally to cities of the sixth class, (section 3704, subsection 7) together with those of section 786 Kentucky Statutes, were broad enough to allow the adoption by the Board of Council of police regulations, not conflicting with general laws, by which a railroad company may be required to use such reasonable precautions as to the speed of its trains, the giving of signals in approaching a crossing or passing through its limits, as may be needful for the safety of the public. Indeed, such authority is expressly conferred by section 786, Kentucky Statutes, which provides:

"Every (railroad) company shall provide each locomotive engine passing on its road with a bell of ordinary size, and steam whistle, and such bell shall be rung, or whistle sounded, outside of incorporated cities or towns, at a distance of at least fifty rods from the place where the road crosses upon the same level any highway or crossing, at which a sign board is required to be maintained, and such bell shall be rung or whistle sounded continuously or alternately until the engine has reached such highway crossing, *and shall give such signals in cities and towns as the legislative authorities thereof may require.*"

But it has never been held in this jurisdiction that under and by virtue of such general police powers the

municipality may compel a railroad company to erect and maintain, at its own expense, safety gates at crossings within its limits. Such power must be expressly conferred as provided by subsection 25, section 3490, Kentucky Statutes applicable to cities of the fourth class.

In P. C. & St. L. Ry. Co. v. Town of Crown Point, 146 Ind., 421, 35 L. R. A., (Old Series) 684, the question involved was as to the power of incorporated towns to compel, by ordinance, a railroad company to keep a watchman, and erect and maintain gates at points where the railroad tracks cross a street and impose a penalty for failure so to do. Authority to pass the ordinance was claimed under sections 3333, 3367, Horners (Indiana) Revised Statutes, 1896, whereby towns are given "exclusive control over the streets, alleys and highways and bridges within the incorporated limits of such towns."

In the opinion it is said:

"It is clear said sections 4357 (3333) and 4404 (3367), supra, do not, in express words, grant the power to pass the ordinance in question. Can such power be fairly implied from those expressly granted, or is such power essential to the declared objects or purpose of the corporation? We think not. It may be admitted that incorporated towns have the power to regulate public travel upon the streets so as to make their use reasonably safe at all times for those who go upon them, and to enact ordinances for the protection of health, life, and property. It is true that the persons and property of those who attempt to cross a railroad track are subject to risk. The question, however, is not whether the incorporated town has a right to protect its inhabitants or their property, but whether it has the right to compel the railroad company to do so at its own expense. The propositions are essentially different. It is not enough to show that incorporated towns have been given the power to regulate travel upon the streets, and to protect life and property. It may be that, under the provisions of the statute above set forth, incorporated towns have the power to keep watchmen and erect and maintain gates at points where a railroad crosses the streets of the town; but this, if true, would not uphold the ordinance in question. Under such a power, if it exists, the watchman must be employed, and the gates erected and maintained, at the expense of the town. To sustain the ordinance, it must be shown that they have been empowered to compel railroad companies, at their own expense, to employ a watch-

man, and erect and maintain gates, at each street crossing—the agency here invoked to accomplish the object.
* * * There is a wide difference betwen the power to compel the employment of watchmen and the erection and maintenance of gates, and the power to regulate the speed of cars within the corporate limits of a town. The object in the latter case is to be attained by the management and use by the company of its machinery, and such regulation relates to how the company shall manage its own property within the corporate limits; while the requirement of gates and watchmen relates to how the company shall compel or induce others upon the streets to regulate themselves and their property when approaching and about to cross its tracks. Sections 4357, (3333) and 4404 (3367), *supra,* may authorize an ordinance not unreasonable in its terms, to prevent the standing of cars and other obstructions on railroad tracks at street crossings, so as to obstruct the same, or an ordinance regulating the speed of railroad trains within the corporate limits of a town, but most certainly not an ordinance to compel the railroad company to keep at its own expense a watchman, and to erect and maintain a gate on each side of the track, at each street crossing. * * * It follows that the court erred in overruling the demurrer to the complaint. Judgment reversed. * * *.'' Cooley Constitutional Limitations, 233-234; Minton v. Larue, 64 U. S., 23; Bloom v. Xenia, 32 Ohio Stats., 465; Toledo W. & W. R. Co. v. Jacksonville, 67 Ill., 37.

In City of Versailles v. Kentucky Highland R. R. Co., 153 Ky., 83, the City of Versailles, which is a city of the fourth class, whose charter, (section 3490, subsection 25) gives its council a supervising control of and over the use of its streets and public grounds by railroads, and power to compel them to erect and maintain gates at any or all street crossings, we had under consideration the validity of an ordinance which required a railroad company to wall and arch its road upon its own ground within the city limits, and we held that while the city council might, under the authority conferred by its charter, by ordinance, exercise a reasonable control over the manner in which the railroad company constructs or operates its railroad upon or in crossing its streets or public grounds, they could not in the absence of express statutory authority, control the manner of its construct-

ing its road on its own ground, although situated within the corporate limits of the city.

We have not considered the question of expense to which appellant would be subjected by the enforcement of the ordinance, its complaint as to the unreasonableness of its provisions, or the oppressive effect of their enforcement, but must hold it unconstitutional and void, because of the want of authority in the council of the City of Prestonsburg to pass it. Such authority may yet be conferred by the Legislature upon cities of the fifth and sixth class, but until it is done, they must content themselves with the passage of such proper ordinances as will compel railroad companies, in running trains through their limits and approaching crossings therein, to adopt such reasonable signals, and such reasonable precautions as to speed, as will give warning of their coming and reasonable opportunity to persons using the streets to avoid collision with them.

For the reasons indicated the judgment is reversed and cause remanded with directions to the circuit court to perpetuate the injunction.