## Louisville & Nashville Railroad Company v. Adams' Administrator.

(Decided October 24, 1924.)

### Appeal from Harrison Circuit Court.

1. Railroads—Negligence at Crossing Held for Jury, on Evidence as to Signals and Speed.—Negligence of railroad as to signals at crossing where its train collided with automobile and speed of train was for jury, on conflicting evidence.

2. Railroads—No Presumption One Killed at Crossing was Negligent. —There is no presumption that one killed at railroad crossing, without eye-witnesses, was negligent.

3. Railroads—Contributory Negligence of Automobilist Killed at Crossing, Held for Jury.—Contributory negligence of automobilist, killed at crossing in absence of eye-witnesses held for jury, though indications were that automobile struck side of engine or tender.

4. Railroads—Duty to Provide Signals in Addition to Ordinary Signals at Extraordinarily Dangerous Crossing.—It is the duty of railroad, in addition to usual and ordinary signals, to provide such signals as are reasonably necessary to give notice of train's approach at extraordinarily dangerous crossings.

5. Railroads—Ordinary Care Required to Keep Electric Bell at Dangerous Crossing in Working Order.—Railroad, after installing stationary electric bell at dangerous crossing, should use ordinary care to see it is kept in working order, but mere fact of installation is not confession that crossing is especially dangerous.

6. Railroads—Instruction Permitting Finding of Negligence, if Railroad had Not Provided Extraordinary Means to Give Notice of Train's Approach, Held Erroneous.—Instruction in substance that, notwithstanding electric bell had been installed at crossing to give notice to travelers of approach of trains, jury might under facts set out in instruction, find existence of negligence, because it had not provided still other extraordinary precautionary means of giving notice, held erroneous.

7. Railroads—Installation of Bell or Gates Does Not Absolve Railroad from Giving Ordinarily Required Signals.—Installation of stationary bell or gate at crossing does not absolve railroad, or

dispense with usual and ordinarily required signals to be given by train operators.

8.  Railroads—Testimony Automobilist Killed was Careful Driver Erroneously Admitted.—In action for death of automobilist at crossing, testimony that decedent was careful and prudént driver, was inadmissible.

WOODWARD & WARFIELD, EMMETT M. DICKINSON and HANSON PETERSON for appellant.

T. E. KING and DANIEL DURBIN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Pearl street in the city of Cynthiana, Kentucky, runs east and west, and something near midway between Walnut street and Church street, both of which run north and south, the track of the Louisville & Nashville Railroad Company crosses Pearl street at grade, with the railroad track some lower than the street, causing a depression at the place of the crossing. Somewhere near the hour of 6:40 p. m. on September 26, 1921, the decedent, Wilson Adams, went in a Ford automobile from his residence on Walnut street to Pearl street and then turned east on Pearl street and almost immediately thereafter there was a crash at the railroad crossing and persons who soon gathered there discovered that there had been some sort of a collision of the machine with a fast passenger train running south, and the automobile was south of the crossing some distance at the side of the track with signs and indications upon it that the collision had occurred to its left side, and Adams was dead or died shortly thereafter. This ordinary action was brought by his administrator in the Harrison circuit court to recover damages sustained by his estate because, as alleged in the petition, he was killed as a result of negligence on the part of the defendant, Louisville & Nashville Railroad Company, its agents and servants. The answer was a denial with a plea of contributory negligence, which in turn was denied, as was also an amended petition, and upon trial the jury, under the instructions given by the court, returned a verdict in favor of plaintiff for $5,500.00, upon which judgment was rendered and defendant's motion for a new trial was overruled, and it prosecutes this appeal.

It is urged in brief of learned counsel for defendant that its motion for a peremptory instruction in its favor should have been sustained because of the failure of plaintiff's proof to establish actionable negligence on the part of defendant, and because, it is said, the proof established beyond controversy contributory negligence on the part of the deceased; that the court erred in the admission of testimony offered by plaintiff over defendant's objections and exceptions, and that there was also error in giving and refusing instructions.

The disposition of the contention in favor of a peremptory instruction requires a brief statement of the facts which the testimony tended to prove. A number of witnesses introduced by plaintiff said that the train on approaching the crossing failed to give signals either by whistle or bell and that the electric bell which defendant had installed at the crossing and which had been in operation for more than six years was not ringing, although the preponderance of the entire evidence introduced at the trial was to the effect that both the signals from the train were given and that the electric bell at the crossing was ringing. There was also a contradiction in the proof as to the speed of the train as it passed over the crossing; the testimony of plaintiff going to show that it was from forty to sixty miles per hour, while that of defendant was that it was running only about eighteen or twenty miles per hour. The same contradiction exists with reference to the obstructions to the view of the traveler on the street in the direction from whence the train was coming, though it is quite thoroughly established that one must be at most about twenty feet from the track before he can see up or down it any considerable distance. It would be useless for us to detail the testimony upon the points mentioned since what we have stated in a general way was sufficient to authorize a submission to the jury of the issue of defendant's negligence.

Strange as it may seem no one saw the accident. One witness saw deceased get into his automobile and start north on Walnut street toward Pearl street and turn into the latter street towards the railroad crossing at a distance of only 155 feet from it, and almost immediately after the turn he heard the crash. Another witness living at the corner of the junction of Walnut street with Pearl street heard the automobile as it passed his house with the exhaustions therefrom indicating that it was going at considerable speed, though the witness did not see it,

and those two witnesses are the only ones who testified concerning any facts immediately preceding or at the time of the accident. As we have said, the evidences of collision were all on the left side of the automobile, but no such evidence was found on the front of the railroad engine nor on its side. However, the step to the tender was broken off as was also the one to the baggage car and there were other signs between the tender and baggage car indicating a collision of some kind. The theory of plaintiff was and is that either the front wheels of the automobile were on or near the rail as the engine dashed upon the crossing and the left front wheel was struck thereby turning the car and producing the injury to its left side, or that the train appeared so suddenly that decedent could not stop his automobile without a head on collision and that he started to turn out south by the side of the track but was so near to the train that the steps of the tender struck his machine and jerked it round so that it scraped against the baggage car and was thrown to the place where it was afterwards found. As will be observed, neither of the witnesses whose testimony we have briefly stated saw deceased as he immediately approached the crossing, nor did either of them pretend to state the speed at which he was traveling *at that time.* He is dead and there will be no presumption that he was negligent and, under the circumstances, as has been frequently held by us, it is not for this court to say as a matter of law that contributory negligence was proven and to direct a verdict accordingly. We, therefore, conclude that neither ground urged in support of the motion for a peremptory instruction is sufficient for that purpose, and that the court did not err in submitting the case to the jury.

But, it is insisted that under the doctrine announced by this court in the case of Sublett v. Mobile & Ohio Railroad Co., 145 Ky. 707, 38 L. R. A. (N. S.) 1153, the court should have given the peremptory instruction asked on the ground that the proof showed that instead of the train colliding with the automobile that the latter collided with the train after it was upon the crossing. But, we are not prepared to agree with counsel in that contention, even though we should concede that the accident happened in that way, which is extremely probable, since there were no indications of a collision on any part of the front of the engine of the train, and both the engineer and fireman testified that they were on the lookout ahead and did not

see any automobile on the track at the crossing, nor did they hear the crash until the engine had gotten upon it. In the first place, there was no driver along with the team in the Sublett case, and it was positively shown that the train well covered the crossing at the time the runaway team collided with it and produced the injuries sued for. Here the most that may be said under the proof is, that if the train did not collide with the automobile while it or some portion of it was upon the track, or so near to it as to come in contact with some portion of the train by a frontal collision, then the train suddenly appeared on the crossing and running at such a high rate of speed that decedent could not stop his machine without coming in contact with some portion of the train, and that in an effort to avoid the collision he turned or attempted to turn down the track and was caught by the steps on the tender resulting in the injuries produced. If the train did so suddenly appear and if it had negligently failed to give warning of its approach then deceased by such negligence, provided he was exercising ordinary care, was suddenly placed in peril and had the right to act in emergency, which is an entirely different case from running into a train that was already covering the crossing before the traveler got so near to it as that by the exercise of ordinary care he could avert the accident. We can well see that if a train was upon the crossing and plainly in view of the traveler as he approached it and in time for him, in the exercise of required care, to prevent a collision, then the defendant would not be liable although it ran upon and over the crossing without warning or signal or with dangerous and reckless speed. We, therefore, conclude that the difference in the facts of the two cases render the doctrine of the one inapplicable to the other and that this contention should be and it is denied.

The court in its first instruction submitted to the jury the duty of defendant as to the giving of notice of the approach of the train to the crossing and as to its speed and its reasonable control, and also said, "or cause the electric bell to sound so as to give timely warning of the approach of the train," and then stated to the jury that if the defendant or any of its agents or employees "failed in any of these duties (including that of warning by the ringing of the electric bell) and by reason thereof the decedent was struck and killed, the law is for the plaintiff and you should so find," etc. It will thus be seen that the court not only submitted to the jury the ordinary

legal duties of the defendant in giving warning of the
train's approach, but likewise required it to have the ex-
traordinary contrivance, the electric bell, in operation so
as, by its use as an extra and precautionary measure at
that character of crossing, travelers on the street might
be notified of the train's approach.  The second instruc-
tion to which defendant objected and excepted was the
usual one approved by this court in the cases of L. & N.
R. R. Co. v. Treanor's Admr., 179 Ky. 337, and others re-
ferred to therein, to the effect that if the crossing was
for any reason more than an ordinarily dangerous one,
then in the language of the instruction, "it was the duty
of the defendant, in addition to the usual and ordinary
signal, to provide such signals as were reasonably neces-
sary to give notice of the train's approach;" which addi-
tional precautionary measures at extraordinarily danger-
ous crossings is a judicially imposed burden on the com-
pany at such extra hazardous crossings as ws held in
the case of Payne, Agent v. Barnette's Admr., 196 Ky.
489, and following that imposed burden the second in-
struction in this case said: "And if you shall believe from
the evidence that the defendant failed to provide such
signals as were reasonably necessary at the crossing de-
scribed and by reason of such failure the decedent was
struck and killed, you ought to find for the plaintiff." A
similar instruction to number 2 in this case was con-
demned in the Barnette opinion, "because the principle
upon which such instructions are held to be proper is not
involved where the railroad company for the safety of
the traveling public maintains a guard or mechanical ap-
pliance at the crossing to give additional warning to
highway travelers of the approach of trains over and
above the train signals required by the statute."  We
expressly recognized in that opinion that a railroad com-
pany, after installing such precautionary safety appli-
ances, such as stationary electric bell as it had done in
that as well as this case, should use ordinary care to see
that it was kept and maintained in working order and
that it would be liable for its neglect to do so; however,
in the same connection it was also said: "But, having
taken upon itself this additional burden to safeguard the
traveling public from harm, it would be extremely unfair
and clearly beyond the contemplation of the Treanor
and like cases to hold that as a result of this commend-
able effort to protect the traveling public the railroad
company thereby confessed the crossing was an especially

dangerous one; and that in addition to having voluntarily assumed the duty of maintaining the stationary crossing signals, it had also imposed upon the operatives of its trains an obligation 'to use such other means to give warning of the approach of the train as an ordinarily prudent man operating a railroad would have adopted under like circumstances.' It is perfectly clear that if at an especially dangerous crossing the railroad company erects and maintains a guard, gates, or electric bell to warn travelers of the approach of trains, operatives of its trains ought not in good conscience be required to assume the burden which the Treanor and like cases placed upon them over and above those imposed by statute, because that burden was judicially imposed upon the sole ground that at such a place the statutory signals were not reasonably sufficient for the purpose of effectively warning travelers of the train's approach; and the reason upon which the doctrine of those cases is based is entirely lacking where the railroad company has erected at a crossing appliances which if maintained in order will give to the travelers such effective notice as they can hardly fail to observe if they exercise any degree of care whatever for their own safety.''

That opinion so completely stated the reason why the extrahazardous instruction should not be given in a case where the company had adopted and installed a means, method or contrivance by the operation of which, if kept in working order, notice of the train's approach could and would be given, as to leave no room for enlargement thereon in this opinion. However, we feel that it would not be amiss to apply that reason to the facts of this case and to emphasize the error in the light of instruction number 1. The latter instruction expressly recognized that the installation of the stationary electric bell was an extraordinary precautionary method provided by the company at that crossing and presumptively because it was an extraordinarily dangerous and hazardous one. It, therefore, told the jury that if that bell was not maintained and kept in working order and by reason thereof decedent was prevented from discovering the approach of the train, then the defendant would be liable unless, of course, the decedent himself was guilty of such contributory negligence as defeated a recovery. The second instruction and the one which we have criticized, and which was condemned in the Barnette opinion, told the jury in substance that, notwithstanding the named

and recognized extra precautionary measure had been taken by defendant, yet the jury might, under the facts as set out in the instruction, find the existence of negligence because the defendant had not provided still other extraordinary and precautionary means of giving notice. If it had done so, as for instance the erection of gates in addition to the installation of the electric bell, then according to the theory of instruction number 2, it would still be guilty of negligence if in the opinion of the jury it had not provided yet other precautionary measures for the giving of notice to travelers, and there would be no end to its burdens or period at which it could discharge its full duty, since whatever it may have provided the jury might still conclude that it had fallen short of its duty and was, therefore, negligent. The Barnette opinion clearly disapproved of such an instruction under similar circumstances and reversed the judgment because it was given, and we feel constrained to follow it, since we conclude that it is based upon both sound reasoning and just principles. We, therefore, conclude that the court erred in giving to the jury instruction number 2. Of course, we do not by this or the Barnette opinion intend to modify the rule announced in the Treanor and other opinions with respect to the necessary precautions at dangerous crossings requiring them where no reasonably effective precautionary measures have been installed or adopted at such crossings; but when they have been adopted and installed the measure of defendant's duty, so far as *their* effectiveness in giving notice is concerned, is to see that they are maintained and kept in effective working order, but which, it will appear, does not absolve the company or dispense with the usual and ordinarily required signals for such a crossing to be given by those operating the train as it approaches the crossing.

Numerous objections are urged to the testimony introduced by plaintiff over defendant's objections and exceptions, the greater part of which related either directly or indirectly to the dangerous character of the crossing which has been practically disposed of by what we have already said, since we have treated the case, as did the defendant before the accident, as if the crossing was a dangerous one, and the objected to testimony bearing upon that fact can have no material effect upon the case either one way or the other.

Defendant also objected to the testimony of witnesses introduced by plaintiff wherein they stated that

decedent was a careful and prudent driver of an automobile, but the court overruled its objection and admitted that testimony, which we think was error. It was so held by us in the case of L. & N. R. Co. v. Taylor's Admr., 31 Ky. L. R. 1142, and in so holding we said: "In a civil action neither side can give in evidence what the custom or practice of either of the parties is. The question is not what they were accustomed to do, but what they did at the time in controversy." Other cases are referred to in that opinion and pertinent utterances of this court on analogous questions will also be found in the cases of Southern Ry. Co. in Ky. v. Winchester's Executrix, 127 Ky. 144, and L. & N. R. Co. v. Gardner's Admr., 140 Ky. 772. The expression in the opinion in the case of I. C. R. Co. v. Outland's Admx., 160 Ky. 714, that "It appears from the evidence that the decedent was a very careful driver," was either a statement of the history of the case or descriptive of his conduct on that particular occasion, and it does not in the least militate against the firm stand taken by this court in the Taylor and other cases wherein the question was directly presented and passed on. The court upon another trial will, therefore, sustain the objection to this character of testimony.

Other questions not herein passed on are left undetermined, since they are not likely to occur upon another trial, but for the reasons stated, the judgment is reversed with directions to grant a new trial and for proceedings consistent herewith.