# Illinois Central Railroad Company et al. v. McGuire's Administrator.

(Decided February 24, 1931.)

(As modified on Denial of Rehearing June 9, 1931.)

2

ROBBINS & SMITH; TRABUE, DOOLAN, HELM & HELM and R. V. FLETCHER for appellants.

GARDNER, McDONALD & HOLIFIELD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN— Affirming.

The administrator of the estate of T. H. McGuire recovered a judgment against the Illinois Central Railroad Company and the Chicago, St. Louis & New Orleans Railroad Company for the sum of $15,000 in a suit growing out of a street crossing accident in the city of Mayfield. Mayfield is a city of the fourth class, containing a population of about 8,000. The railroad tracks run north and south through the western part of the town. A greater number of the inhabitants resides on the east side of the tracks. Broadway street crosses the railroad tracks at an acute angle. The crossing is much traveled by the public. The accident out of which this litigation grew occurred at 8:58 a. m. on Sunday, January 30, 1927.

Three railroad tracks cross the street at the Broadway crossing. One is the main line, which is to the east, and is the track on which the train was running when the accident occurred. The first track west of the main track

is a switch track, known as the "house track." The second switch track to the west is known as the "wagon track," and it is 40 feet west of the main line track.

There are a number of buildings about this crossing, and their location has been established by minute measurements. The purpose of showing with particularity the location and character of buildings was to establish that the crossing was unusually dangerous, as the approach of trains was obscured by the buildings. There were freight cars on one of the switch tracks. It was the contention of appellee that the location of the buildings and the location of the freight cars on the switch track were such as to render the crossing unusually dangerous, while this position was combated by appellants with the same particularity as exercised by appellee in establishing its contention on this point.

Broadway street is 50 feet wide between the curbs, with a pavement about 5 feet wide on each side. It is practically a straight level street, although there is a slight dip approaching the railroad tracks from the west. We hardly think it worth while to follow the evidence in detail showing that the crossing was, or was not, unusually dangerous. The facts and circumstances show that it had been regarded for years as a dangerous crossing by the railroad companies, and extreme caution was usually exercised to prevent accidents.

On the morning of the accident, T. H. McGuire approached the railroad tracks from the west in his automobile at a speed of about 12 miles an hour. The train approached the crossing from the north at about the same speed. McGuire was on the south side of Broadway. There is a sharp dispute in the evidence as to the point at which he could have first seen the approaching train. There is a sharp dispute in the evidence as to whether the crossing signals were sounded, when signals were given, or whether a proper lookout was maintained. There is no dispute in the evidence on the point that no flagman for the railroad companies was present in the exercise of his duties at the time of the accident. There is no dispute in the evidence that a man saw the danger of the collision and attempted to warn McGuire of the approaching danger, but, whether McGuire saw, or understood, the warning is not established. There is no dispute in the evidence from circumstances that McGuire saw the approaching train and attempted to stop his

automobile. There is evidence that he was looking north apparently for an approaching train as he approached the railroad tracks. There is no dispute in the evidence about the fact that McGuire was familiar with the crossing and had crossed it from the east to the west within less than thirty minutes before the accident. It is not disputed that the train was on time. It is not disputed that the engineer applied his brakes and did what he could to stop the train after he discovered that McGuire was going to drive upon the track; yet there is a conflict in the evidence when all circumstances are taken into consideration as to whether the engineer could have discovered the approaching peril to McGuire sooner than he testified that he discovered it.

The automobile driven by McGuire and the engine of the train reached the crossing about the same time, resulting in a collision that caused the death of McGuire. The briefs submitted by counsel representing both sides of this controversy leave no question that could be made on the record without discussion, explanation, and argument. We may put them all to one side except two. If it was the duty of the railroad companies to maintain a flagman at the crossing to warn the traveling public using the crossing of the approach of trains and they failed to perform that duty and that failure was the proximate cause of the accident resulting in the death of McGuire, there is no room for argument against the negligence of appellants. The failure to have a flagman on duty was itself negligence which cannot be overcome by any evidnece if it was the duty of appellants to maintain a flagman at the crossing at the time of the accident. It is admitted that there was no flagman. The jury was certainly warranted in believing from the evidence that the accident would not have occurred if a flagman had been present at the crossing performing his duties in warning the public of approaching trains. If it should be determined that it was the duty of appellants to have a flagman at the crossing to warn the public of the approaching trains and they failed in the discharge of that duty, then the only other important question would be whether McGuire was guilty of contributory negligence. Other collateral questions may arise, but these are the controlling questions if it was the duty of appellants to have a flagman at the time and they failed to do so. It is admitted that a flagman was kept at the

crossing by the appellants at the hour when the accident occurred on all days except Sundays. It is admitted that there was an ordinance enacted by the city council of Mayfield requiring the Illinois Central Railroad Company, the lessee of its coappellant, or any other railroad company operating that line of railroad, to keep a flagman at the Broadway crossing in the city of Mayfield from 6 o'clock a. m. to 9 o'clock p. m. on each day. This ordinance was enacted on July 13, 1898. The court, in its instructions to the jury, placed upon the appellants the duty of maintaining a flagman at the hour when the accident occurred, and allowed a recovery if the duty was not performed.

Appellants attack the ordinance on the ground that a city of the fourth class is not authorized to enact such an ordinance, and they further insist that the ordinance was not properly proven and was not admissible in evidence because of the failure to properly prove it, and because it was invalid. It is also insisted by appellants that negligence cannot be established by proving the breach of an ordinance.

It is contended that the city of Mayfield had no statutory authority to enact the ordinance placing a duty on a railroad company to keep a flagman at the crossing. The opinion chiefly relied on by counsel for appellants is C. & O. Railway Company v. Harmon, 153 Ky. 669, 156 S. W. 121, 122, 45 L. R. A. (N. S.) 946. It is said in briefs for appellants that it was held in that case that a city of the fourth class has no authority to require gates, or watchmen, at crossings within the city unless the authority to require them is expressly granted to such cities by the Legislature. It is argued that it was held in that case that section 786, Ky. Stats., does not make such a grant, and that such cities are therefore without the power to enact such an ordinance. That case was one in which the right of a city of the fifth class to require a railroad company to maintain and operate safety gates at street crossings was involved. The court held that there was no such power vested in the governing authorities of cities of the fifth class. While no question relating to cities of the fourth class was before the court, yet the court took occasion to point out that the powers conferred upon cities in the fourth class and all cities above the fifth class was greater in each class than the

power vested in the cities of the fifth class. The court said:

"It seems, to be conferred by the statutes though in differing language, upon cities of each class above that of the fifth, but withheld from those of the fifth and sixth classes. Thus in section 3490, subsec. 25, Kentucky Statutes, relating to cities of the fourth class, we find it provided:" (Then follows a quotation embracing subsection 25 of section 3490, Ky. Stats.)

The opinion cites cases in which it had been held that cities above the fourth class had enacted such ordinances which had been upheld by this court. Then, after quoting section 786, Ky. Stats., it was said: "But it has never been held in this jurisdiction that under and by virtue of such general police powers the municipality may compel a railroad company to erect and maintain, at its own expense, safety gates at crossings within its limits. Such power must be expressly conferred, as provided by subsection 25, sec. 3490, Kentucky Statutes," applicable to cities of the fourth class.

On the other hand counsel for appellee rely on the case of L. & N. R. R. Co. v. Louisville Provision Company, 212 Ky. 709, 279 S. W. 1100, as supporting their contention that the city of Mayfield had the authority to require a railroad company to maintain a flagman at a crossing within the city. That section of the statute requires every railroad company to equip its locomotive engine with a bell and steam whistle, and requires certain signals to be given outside of incorporated cities and towns, and then makes it obligatory on the company to give such signals in cities and towns as the legislative authorities thereof may require. The ordinance in the Louisville Provision Company Case required the maintenance of an electric gong or signal at a certain crossing, and it was held that the failure to maintain such a signal was negligence on the part of the railroad company. In the Harmon Case it was held that cities of the fifth class had no authority to require the maintenance of a gate at a crossing. Subsection 25 of section 3490, Ky. Stats., specifically authorizes cities of the fourth class to require railroad companies to maintain gates at street crossings. But that section also authorizes a city of the fourth class to have a supervising control over the use of the public streets which are used by railroad com-

panies. Whether the requiring of a flagman at a crossing is authorized by section 786 on the ground that it is only another species of giving signals and that the authority of the city to enact such an ordinance is found therein is unnecessary to determine at this time, as we find in subsection 25 of section 3490, Ky. Stats., authority vested in the city council of cities of the fourth class to maintain a supervising control over the use of streets which are also used by railroad companies, and under that authority the city of Mayfield, through its council, was authorized to enact an ordinance requiring a flagman to be kept at the Broadway crossing between the hours mentioned in the ordinance, and, under the authority of the Louisville Provision Company Case, supra, the faliure to maintain a flagman and have him on duty at the time of the accident in which McGuire was killed was negligence on the part of the railroad companies for which a recovery was authorized unless prevented by some act of omission, or commission by McGuire.

It appears that, if a requirement that an electric gong shall be maintained at a crossing in a city is authorized by the provisions of section 786, Ky. Stats., the requiring of a watchman at a crossing to give signals would also be authorized. But we do not have that question before us, since we have found that cities of the fourth class have authority to require a flagman to be maintained at a crossing under the provisions of subsection 25 of section 3490, Ky. Stats. The question of whether a city having no similar provision in its charter may enact such an ordinance under the provisions of section 786, Ky. Stats., will be left for consideration when such a case is presented to the court, and then the court may determine whether there is a conflict between the opinion in the Louisville Provision Company Case and the opinion in the Harmon Case.

The competency of the ordinance as evidence is also established by the opinion in the Louisville Provision Company Case. But it is suggested that the ordinance was not properly introduced as evidence. It is said that the only proof offered of the ordinance was to have it read from the ordinance book by the city clerk. It is suggested that there should have been additional proof to the effect that the ordinance was still in effect, but there is no case cited by counsel for appellants to sustain that position. The ordinance and the book in which it

was recorded were offered in evidence. The presumption is that the ordinance was regularly adopted. City of Somerset v. Gardiner, 228 Ky. 512, 15 S. W. (2d) 303. It appeared regular on its face, and that cast the burden upon the one attacking it to show that it was invalid. Baker v. Combs, 194 Ky. 260, 239 S. W. 56. After an ordinance has been properly proven, the party asserting its repeal has the burden of proving that fact. Marshall v. Herndon, 161 Ky. 232, 170 S. W. 623. When an ordinance is once enacted, it is presumed to continue in force, and the party relying on it is not required to show that it has not been repealed. 43 C. J. 939.

It is contended by counsel for appellants that the ordinance could not be introduced as evidence of negligence, and they cite the case of Ford's Adm'r v. Paducah City Railway Company, 124 Ky. 488, 99 S. W. 355, 30 Ky. Law Rep. 644, 8 L. R. A. (N. S.) 1093, 124 Am. St. Rep. 412. It was so held in that case, but in the later case of L. & N. R. R. Co. v. Louisville Provision Company, supra, this court admitted that there was a conflict in authority on that particular point and mentioned the Ford Case along with others where it had been held that such evidence was incompetent. Admitting the conflict in the opinions, the court settled down to the conclusion that the opinions holding such evidence competent were sound and should be followed. The Ford Case, therefore, was, in effect, overruled on that point by the opinion in the Louisville Provision Company Case.

It is argued that the ordinance should not have been admitted as evidence, and that appellee could not rely on it for any purpose because he had not pleaded the ordinance in support of his cause of action. Counsel for appellants say that the ordinance was a private statute, and that under the provisions of section 119 of the Civil Code of Practice, it was necessary that it be pleaded by appellee if it was to be relied on as supporting the cause of action. The basis of recovery as alleged by appellee in his petition was negligence on the part of the railroad company in the operation and control of its trains at the crossing. The ordinance was not the basis of the action, but was evidence of the negligence of the railroad company in that it established that it was a statutory duty of the railroad company to maintain a flagman at the crossing, and the failure on the part of one to perform the duties required constituted negligence.

In the case of Nashville, Chattanooga & St. Louis Railway Company v. R. D. White, Adm'r, 278 U. S. 456, 49 S. Ct. 189, 190, 73 L. Ed. 452, the Supreme Court of the United States had before it a question of negligence caused by the failure to obey an ordinance requiring the maintaining of a flagman at a street crossing in the city of Memphis. There was a collision at a grade crossing in that city in which one W. D. White was killed. He was at the time driving the automobile. Judgment was obtained against the railroad company, and that judgment was affirmed by the Supreme Court of Tennessee. 158 Tenn. 407, 15 S. W. (2d) 1. White at the time knew that the railroad company did not maintain a flagman at the crossing. The Tennessee Supreme Court held that his going on the crossing knowing that there was no flagman there and that it was not the custom of the railroad company to maintain a flagman at that point was not the cause of the accident, but that the proximate cause of the injuries was the failure of the railroad company to comply with the ordinance requiring railroads to keep a flagman constantly on duty whose duty it was to give warning of approaching trains by waving a flag in daytime and a red lamp by night until the engine had crossed the street. The railroad company had substituted an electric signal on one side of the street that gave warning by flashing a light and ringing a bell and which was set in operation mechanically by the train as it approached the crossing. The Supreme Court of Tennessee held that the failure to comply with the ordinance and maintain a flagman at the crossing was the direct cause of the injury. The Supreme Court of the United States adopted the same view, and Judge Holmes, writing for the court, said:

"We are compelled to take the same view. The legislative arguments in favor of the Railway are manifest and we may conjecture that it is only a matter of time before the old methods of guarding grade crossings will have disappeared unless the grade crossings precede them. But if the ordinance were passed today and came up for a decision upon its validity it could not be denied that a man in the middle of the street or near to it and intent on stopping traffic might stop some travelers who might not notice electric signs. There is a marginal chance that occasionally a life may be saved. In this very

case it is at least possible that a man on the ground would have stopped the plaintiffs, they not being intent on suicide. No doubt legislatures do not neglect such marginal chances. Many modern improvements must be expected to take their toll of life. When a railroad is built experience teaches that it is pretty certain to kill some people before it has lasted long. But a Court cannot condemn a legislature that refuses to allow the toll to be taken even if it thinks that the gain by the change would compensate for any such loss. It follows that we must affirm the judgments below.''

The ordinance under consideration there was enacted in 1880, and the railroad company had substituted an electric signal for a flagman at the crossing. The opinion from which the quotation is taken was written in 1929. While the ordinance was old and its observance had been abandoned, yet it was held that the failure of the railroad company to comply with its provisions was the proximate cause of the injuries.

The authorities support the position that it was not necessary to plead the ordinance. If the cause of action is not based on an ordinance, it is not necessary that it be pleaded in order that it may be admitted in evidence. 43 C. J. 577. In this case, as said above, the ordinance was only evidence of the negligence of the railroad company. Section 786 Ky. Stats., made it the duty of the railroad company to give such signals as required by the governing authority of the city, and, if it be considered that the ordinance required the giving of a signal by maintaining a flagman at the crossing, that section imposed a duty on the railroad company which it was negligence to omit. However this may be, when the city under the authority of subsection 25 of section 3490, Ky. Stats., enacted the ordinance, it became the duty of the railroad to obey the ordinance, and its failure to do so constituted negligence. The action was based on negligence and not on the ordinance. The ordinance was only evidence of the negligence.

The direct point was before the California court in the case of Opitz v. Schenck, 178 Cal. 636, 174 P. 40, where it was held that an ordinance might be introduced under an allegation of general negligence in the petition. It was there said that an action based on negligence might be supported by the introduction of an ordinance

imposing upon one a duty and showing that the duty had not been performed.

In the case of State ex rel. v. Reynolds, et al., 279 Mo. 493, 214 S. W. 369, the Missouri court held that it was not necessary to plead an ordinance when the action was based on the grounds of negligence generally alleged, although a violation of the ordinance was relied on as constituting the negligence.

Another point made against the validity of the ordinance is that by its terms it applied only to the Illinois Central Railroad Company. Its coappellant is the owner of the railroad tracks through the city of Mayfield, and, so far as the record shows, there is no other railroad line running through Mayfield. The Illinois Central Railroad Company is the lessee of its coappellant. The ordinance applied to the Illinois Central Railroad Company or other company or persons operating the railroad called the St. Louis & Memphis Division of the Illinois Central Railroad Company, which was formerly known as the Chesapeake, Ohio & Southeastern Railroad. It was alleged in the petition that the railroad track and right of way were the property of the Chicago, St. Louis & New Orleans Railroad Company and had been leased by it to the Illinois Central Railroad Company. This allegation was not denied. It had the authority to so lease its property under the provisions of section 769, Ky. Stats. It was held in the case of Clinger's Adm'x v. C. & O. Railway Company, 128 Ky. 736, 109 S. W. 315, 33 Ky. Law Rep. 86, 15 L. R. A. (N. S.) 998, that the lessor of lines of railroad is not relieved from responsibility for negligence in operating the road by its lessee. It cannot escape liability for an accident occurring while its road is operated by the lessee, although the lessor had no control over the operation and management of the lines. The ordinance applied to any railroad company operating the lines mentioned and described in it. It was not error to admit the ordinance as evidence against the lessor under the settled law of this state that the lessor of railroad lines is responsible for the actionable negligence of the lessee.

Appellants were not entitled to an instruction directing the jury to return a verdict for them unless McGuire was guilty of contributory negligence as a matter of law, a question which we will pursue later on in this opinion. At the present we will consider whether instructions 1

and 2 given by the court were prejudicial to the rights of appellant. It is argued by appellants that the first instruction was erroneous because it required the railroad companies to maintain a flagman at the crossing although it may have been an ordinary crossing. It is their contention that the jury should not have been authorized to return a verdict in favor of appellee unless the crossing was unusually dangerous and they failed to take proper precaution commensurate with the increased danger to the traveling public. It was the duty of the appellants to maintain a flagman at the crossing because the ordinance of the city required it. If it was the duty of the appellants to maintain a flagman at the Broadway crossing between the hours of 6 a. m. and 9 p. m. each day as required by the ordinance, it was negligence to fail to perform that duty, and, as it is admitted that no flagman was on duty at the time of the accident, it is unnecessary to search for other acts or omissions that constituted negligence on the part of the appellants. It is said by counsel for appellants that the instruction should have permitted them to substitute some other reasonable method of meeting the increased danger to the traveling public, if it was an unusually dangerous crossing, for keeping a flagman. By this they mean that, if the railroad companies failed to maintain a flagman, yet, if they did something else equally as well suited for the purpose, they should have been excused from the negligence of failing to keep a flagman, or rather the substituted means of warning the traveling public should be held to render unnecessary the maintaining of a flagman at the crossing. That question was considered in the case of Nashville, Chattanooga & St. Louis Railway Company v. R. D. White, Administrator, supra, and it was there held that the substitution of an electric signal for a flagman was not sufficient to satisfy the requirements of an ordinance that a flagman should be maintained at the crossing. This record leaves a very distinct impression on the mind that McGuire would not have been killed in this accident if a flagman had been on duty at the time. The negligence of appellants was, therefore, admitted, and the second instruction complained of could not have been prejudicial if it should be found erroneous.

The instructions respecting extrahazardous crossings have been the subject of much consideration by this

court, and the distinctions that must be observed in the various situations are fully explained by previous decisions. Southern Ry. Co. v. Winchester's Ex'x, 127 Ky. 144, 105 S. W. 167, 32 Ky. Law Rep. 19; L. & N. Ry. Co. v. Treanor's Adm'r. 179 Ky. 350, 200 S. W. 634; L. & N. Ry. Co. v. Jameson's Adm'r, 214 Ky. 552, 283 S. W. 1026; L. & N. Ry. Co. v. Thompson, 217 Ky. 21, 288 S. W. 761; Payne, Agt., v. Barnette's Adm'r, 196 Ky. 489, 244 S. W. 896; Payne, Agent, v. Elkin, 202 Ky. 285, 259 S. W. 349; L. & N. Ry. Co. v. Adams, 205 Ky. 203, 265 S. W. 623; C. & O. Ry. Co. v. Mc Coy, 228 Ky 752, 16 S. W. (2d) 170; L. & N. Ry. Co. v. Crockett's Adm'r, 232 Ky 726, 24 S. W. (2d) 580.

The instruction upon that subject in the present case, in the light of the other instructions,was not prejudicial, since the only other means ordinarily provided at the crossing in question was a flagman, who was not on duty at the time of the accident. The instruction was not affected by the vice found in the instructions in the Jameson, Barnette, and Adams Cases.

The other controlling question as to liability on appellants is whether McGuire was guilty of contributory negligence as a matter of law. The question of his contributory negligence was properly submitted to the jury. We shall not take the time or space to analyze the cases relied on by appellants, or those relied on by appellee, touching this particular point. The late case of L. & N. R. R. Co. v. Crockett's Administratrix, 232 Ky. 726, 24 S. W. (2d) 580, is conclusive on the question before us. There should not have been a peremptory instruction in behalf of appellants under the facts in this case.

The sudden peril instruction, in view of the conclusions we have reached, is not material one way or the other, so there is no reason why the court should determine whether there was evidence authorizing the giving of the instruction. Neither did the court err in refusing to give the instructions offered by appellants. If the jury had been told that appellants had the right to erect depots, loading platforms, and other structures necessary for its use where it did erect them as called for by instruction J offered by appellants, it would have been irrelevant, as all of that may be admitted, and yet appellants would not be relieved of the duty to maintain a flagman at the crossing, and the same may be said of instruction K, offered by appellants, which would have

told the jury that appellants had the right to place its cars on its side track where it did place them.

Complaint is made about certain evidence that was admitted over the objections of appellants. The evidence was admitted to the effect that appellants maintained a flagman at the crossing on week days. If there had been a dispute over whether a flagman was on duty at the time of the accident, this evidence, if incompetent, would have been prejudicial. But it is not necessary for us to determine whether the evidence was incompetent, because it could not have been prejudicial, as it is admitted that there was no flagman on duty at the time of the accident.

Complaint is made about the evidence of W. E. Shelton because he was allowed to testify as to an experience he had at the same crossing some time prior to the fatal accident. This evidence was excluded from the consideration of the jury on a motion of the appellee. We do not think that there was any prejudicial error in the admission of this evidence, since it was thereafter excluded. The purpose of its introduction apparently was to show where one approaching the crossing from the west could first see a train approaching from the north, but we are of the opinion that the court acted properly in excluding the evidence, although it may not have been prejudicial if it had been allowed to remain before the jury. If the evidence had been confined to the one point of showing where a train could first be seen approaching, it appears that under the authority of the case of L. & N. R. R. Co. v. Howser's Adm'r, 201 Ky. 548, 257 S. W. 1010, 36 A. L. R. 327, the evidence would have been competent.

It is also insisted that the court should have allowed evidence offered by appellants to the effect that McGuire was an inexperienced driver of an automobile. An examination of this evidence shows that the witnesses who offered to testify that McGuire was an inexperienced driver were lacking in information which would enable them to give testimony on the point. A man may be an inexperienced driver and yet drive carefully. It was held in the case of L. & N. R. R. Co. v. Adams' Adm'r, 205 Ky. 203, 265 S. W. 623, that it was error to allow the introduction of evidence tending to show that a person was a careful and prudent driver of an automobile, and it was also held in that case that neither side may give in

evidence what the custom or practice of either of the parties is, as the question was not what they were accustomed to do, but what they did at the time of the happening of the event which gave rise to the controversy. There was no error in refusing to allow this evidence, and the court correctly excluded the evidence offered by appellee to show that McGuire was an inexperienced driver.

Further complaint is made that the court would not allow appellants to introduce evidence showing that McGuire was drunk on Saturday night preceding the accident on Sunday morning. We do not think this was error under the authority of the case of L. & N. R. R. Co. v. Gardner's Admr., 140 Ky. 772, 131 S. W. 787. He may have been drunk on Saturday night and sober Sunday morning. This court knows, by observation, not by experience, that a man may be drunk on the night before and sober on the succeeding morning. The evidence was too remote. We think the correct rule is stated in the case of Dawson v. Shannon, 225 Ky. 635, 9 S. W. (2d) 998, which is but a reaffirmation of the rule announced in the case of City of Madisonville v. Stewart (Ky.) 121 S. W. 421. Certainly it would have been competent to have shown that McGuire was under the influence of intoxicating liquors at the time of the accident, and it would not have been improper to show that he was intoxicated at a time previous to the accident if it may have been reasonably anticipated that the intoxication would not have passed off before the accident, but to show that he was intoxicated on the night previous to the accident was no proof that he was intoxicated at the time of the accident.

It is insisted by counsel for appellants that counsel for appellee, in his opening statement to the jury and his closing argument, transgressed the rules announced by this court in the opinions in the cases of Knights of Maccabees of the World v. Shields, 156 Ky. 270, 160 S. W. 1043, 49 L. R. A. (N. S.) 853 and Liverpool & London & Globe Insurance Company v. Wright, 158 Ky. 290, 164 S. W. 952. It has been often held by this court that improper argument by counsel before a jury when it is flagrant and persistently indulged in constitutes a sufficient reason for the reversal of a judgment. The rule in such cases is amplified in the late cases of Johnson v.

Commonwealth, 225 Ky. 413, 9 S. W. (2d) 53, and City of Providence v. Young, 227 Ky. 690, 13 S. W. (2d) 1022.

The first thing to be determined after having found the argument improper is whether it was prejudicial to the rights of the opposite party. If the argument, although improper, could not have been prejudicial to the rights of the litigants whom he did not represent, the argument of counsel would not justify the reversal of a judgment.

The opening statement of counsel contained reference to the ordinance enacted in 1898 requiring a flagman to be kept at the crossing. It was said that a flagman was kept there during the week, but that the railroad had violated the law willfully by not keeping a flagman at the crossing at all times as required by the ordinance. The statement was not improper. In the concluding argument to the jury, counsel for appellee made statements as to the rights which railroads had separate from the rights of the general public, but we find nothing in these statements that was improper.

The statement that the charge of drunkenness had been trumped up, that pictures had been faked, and that testimony had been changed probably went further than counsel should have gone, but he was entitled to draw his inferences from the evidence before the jury. As long as statements are based on the evidence, or the inferences reasonably deducible from the evidence, counsel has the right to express to the jury his analysis of what he thinks the evidence shows. Without going into details touching the argument of counsel to the jury, we have reached the conclusion that there was nothing prejudicial in view of the admitted negligence on the part of appellants. But there were some statements made by counsel that transgressed the rules laid down in the cases cited above. In view of the verdict returned, there is nothing to show that the passions or prejudices of the jury were aroused, and, as the case was one where there was little room for the jury to escape bringing in a verdict for the appellee, we find no argument that was made before the jury by counsel representing the appellee which can be held to have been prejudicial.

On the whole case we have reached the conclusion that the record presents no prejudicial error, and that the judgment was fairly obtained.

Judgment affirmed.